JOSE ALVAREZ *et al.*, Plaintiffs-Appellants, v. KOBY MACHINERY COMPANY, LTD., *et al.*, Defendants-Appellees.

First District (3rd Division) No. 87—829

Opinion filed November 25, 1987.

Bresler, Brenner & Moltzen, of Chicago (Scott Skaletsky, of counsel), for appellants.

Thomas F. Roche and Michael T. Reid, both of Chicago (Halfpenny, Hahn & Roche, of counsel), for appellees.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs Jose and Gloria Alvarez appeal from an order of the trial court granting summary judgment in favor of F. A. Ziegler Company (defendant) in a products liability action. On appeal, plaintiffs argue that the trial court erred in finding that defendant was not within the chain of distribution of the allegedly defective product, that there exists a genuine issue of material fact, and thus, granting summary judgment was improper.

Plaintiff Jose Alvarez, an employee of Lamkin Leather and Rubber Company, alleges he was seriously injured during the course of his employment on January 18, 1984, while operating a mill manufactured by Koby Machinery Company. Plaintiffs filed a complaint in strict liability and negligence alleging personal injury to Jose and loss of consortium to his wife, Gloria. Plaintiffs named Koby and defendant as "engaged in the business of designing, preparing, manufacturing, advertising, distributing, supplying, and/or selling" the Koby mill

in question. Koby is not involved in this appeal.

Defendant filed a motion for summary judgment supported by an affidavit from its president, Frederick Ziegler, alleging that it had no connection with the machine in question and did not participate in, or in fact design, prepare, manufacture, advertise, offer to sell, or act as a manufacturer's representative for the Koby mill in question. In support of its motion for summary judgment, defendant offered the following facts.

Frederick Ziegler is the president and sole shareholder of defendant. The company is a manufacturer's representative of rubber industry machinery products, marketing new machinery and products under contract with certain manufacturers on a commission basis. Defendant has never represented, marketed or sold Koby machinery.

In 1982, Lamkin, plaintiff's employer, contacted one of the manufacturers represented by defendant, the McNeil Akron Corp., about equipment components. McNeil Akron referred the contact to defendant. Ziegler visited Lamkin's plant to determine the compatibility of the equipment Lamkin wished to purchase with its existing machinery. Ziegler attempted to sell Lamkin a McNeil Akron mill. Lamkin indicated, however, that it did not want to spend that much money, that it already had two mills manufactured by Koby, that it had a stock of spare parts for Koby mills and that it wanted to add another used Koby mill. Defendant did not carry or sell Koby mills but Ziegler agreed to keep his eyes open for a used Koby mill for Lamkin.

Ziegler learned from reading a classified ad in a trade newspaper that Rubber City Machinery Corp. in Tampa, Florida, was selling a used Koby mill. Ziegler sent for the machine's specifications and price and forwarded this information to Lamkin. Ziegler agreed to inspect the gear box of the used mill for Lamkin. A Lamkin employee accompanied Ziegler to Florida to inspect the remainder of the mill, which they found to be unassembled in an outdoor storage facility. Ziegler received no compensation for inspecting the gear box, although Lamkin paid for his expenses. Ziegler made no recommendations to Lamkin as to any modifications to make the machine suitable for its purposes. Ziegler did not participate in the negotiations for the sale of the Koby mill, the entire transaction taking place between Lamkin and Rubber City. Ziegler received no compensation in connection with the sale of this machine, nor did he participate in the installation of the mill.

■ Ruling on defendant's motion for summary judgment, the trial court found that defendant's conduct could not be characterized as placing the mill into the chain of distribution, and thus defendant

could not be liable in a strict liability action. On appeal, plaintiffs allege that there exists a genuine issue of material fact regarding defendant's connection to the product and its placement into the stream of commerce. Plaintiffs argue that Illinois courts have expanded the category of liable parties outside the chain of distribution of a defective product in a strict liability action, and that defendant's role in the present case sufficiently linked it to the sale of the defective mill to impose strict liability.

Our supreme court first extended the category of those who could be liable in a strict liability action in *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182. Cases decided after *Suvada* held that all parties in the chain of distribution of a defective product could be held liable in an action based on strict liability. (*Thomas v. Kaiser Agricultural Chemicals* (1980), 81 Ill. 2d 206, 407 N.E.2d 32.) In addition to manufacturers and sellers, Illinois courts have imposed liability on distributors, retailers, wholesalers, and lessors. *Dunham v. Vaughan & Bushnell Manufacturing Co.* (1969), 42 Ill. 2d 339, 247 N.E.2d 401; *Galluccio v. Hertz Corp.* (1971), 1 Ill. App. 3d 272, 274 N.E.2d 178.

This category of strictly liable defendants has been expanded by courts which have held that participation in distribution is not an essential element for the doctrine of strict liability to apply. In *Connelly v. Uniroyal, Inc.* (1979), 75 Ill. 2d 393, 389 N.E.2d 155, the court held that Uniroyal could be strictly liable after finding that Uniroyal's only connection with the defective product was as a licensor. The court held that the licensor is an integral part of the marketing enterprise and its participation in the profits reaped by placing the defective product in the stream of commerce presents the same public policy reasons for application of strict liability which supported the imposition of liability on wholesalers, retailers and lessors. (*Connelly*, 75 Ill. 2d 393, 389 N.E.2d 155.) It is important to note that *Connelly* and the cases applying the rule set forth therein emphasize the fact that profits were made by the particular defendants. The court in *Connelly* stated that the societal purpose of strict liability mandates that strict liability apply to one who, for consideration, authorizes the use of a trademark. Clearly, one of the underlying reasons for imposing strict liability is to ensure that losses are borne by those who created the risk and subsequently reaped profit from marketing an allegedly defective product. *Keen v. Dominick's Finer Foods, Inc.* (1977), 49 Ill. App. 3d 480, 364 N.E.2d 502.

In the present case, Ziegler received no consideration for the role he played in bringing Lamkin together with the seller of the Koby

mill. We do not agree with plaintiffs' contention that future goodwill with a current client was sufficient economic benefit to place defendant in the same category of defendants contemplated by *Connelly*. Furthermore, in the *Connelly* case, by authorizing use of its trademark, Uniroyal played a significantly greater role in injecting the defective product into the stream of commerce than defendant in the present case. It is uncontradicted that defendant did not recommend the purchase of the Koby mill, as plaintiffs argue, and that defendant did not benefit from the sale. Defendant's major role was to inform Lamkin that the mill was for sale, and no courts to date have found this remote role to be sufficient basis for imposing strict liability.

Plaintiffs also urge that defendant supplied the mill incident to its course of business and thus could be held liable in a strict liability action. In *Bainter v. Lamoine LP Gas Co.* (1974), 24 Ill. App. 3d 913, 321 N.E.2d 744, the court held a seller of LP gas could be liable for injuries caused by a defective gas storage tank. The tank was not actually sold to the customer but was supplied by way of a loan. The court found that even though defendant was not in the business of selling tanks, the loan of the tank was incident to the sale of the gas and sufficient to impose liability upon the gas company for the defective tank. Plaintiffs argue that because the court in *Bainter* held that it was not necessary that defendant be in the business of selling the storage tanks, defendant in the present case need not be in the business of selling Koby mills. The present case does not involve a defective product loaned as a requisite element to the sale of another product. We acknowledge that a defendant does not have to be in the business of selling a product to be strictly liable. Nevertheless, defendant here had no connection with the sale of the defective mill sufficient to impose strict liability.

Plaintiffs also rely on *Nowakowski v. Hoppe Tire Co.* (1976), 39 Ill. App. 3d 155, 349 N.E.2d 578, where plaintiff was injured when a truck tire he was mounting exploded. A defective lock ring in the tire assembly which was supplied by defendant in the regular course of its business caused the injury. The court found that the defendant had placed the defective product in the stream of commerce, notwithstanding that he had not sold the product. Plaintiffs here argue that because defendant was a manufacturer's representative, the role it played in Lamkin's purchase of the Koby mill was incident to its regular course of business. We disagree. Unlike the defendant's role in *Nowakowski*, defendant here never supplied or had any connection with Koby equipment.

This court has pointed out that there are many parties who have

some relation to the manufacture and sale of a product, but are not directly related to the distributive process contemplated by product liability theories. In *Harms v. Caterpillar Tractor Co.* (1980), 80 Ill. App. 3d 262, 399 N.E.2d 722, this court cited several examples of parties that are related to a product, but not in the distribution chain and not intended to be defendants in a products liability action. As examples, the court cited a patent licensor, a consultant, an independent engineering firm, an independent testing laboratory, a law firm, a transportation company and an independent warehouse. (*Harms*, 80 Ill. App. 3d 262, 399 N.E.2d 722.) In our estimation, the roles played by these parties in relation to the final distribution of a product are greater than the role played by defendant in the present case. Furthermore, the court in *Harms* noted that the parties cited may be related to the general economic system while remaining outside the distribution system. In contrast, defendant here was not related to the general economic system of the product. Defendant did not make a profit from the sale of the mill, nor was it working for any party who would ultimately profit from the sale.

■ Plaintiffs further claim on appeal that even if the trial court properly entered summary judgment on the issue of strict liability, it was improper to include their negligence claims in the summary judgment. As properly noted by the trial court, the negligence claims relate to defective design of the Koby mill, and it is undisputed that defendant did not participate in the design of the product. Plaintiffs also contend, however, that defendant had a duty to adequately warn of the defective nature of the mill. We disagree. While Ziegler inspected the gear box of the mill before Lamkin purchased the mill, it is uncontradicted that he made no recommendations because he believed he had insufficient knowledge of Koby mills upon which to base such a recommendation. We find no basis for imposing a duty to warn upon defendant, and therefore the trial court properly included plaintiffs' negligence claims in the summary judgment.

For the foregoing reasons, the order of the circuit court of Cook County granting summary judgment in favor of defendant is hereby affirmed.

Judgment affirmed.

RIZZI and FREEMAN, JJ., concur.