JAMES BITTLER *et al.*, Plaintiffs-Appellants, v. WHITE AND COMPANY, INC., Defendant-Appellee (D.P. Way Corporation, a/k/a D.P. Way Company or D.P. Way Division of Cannon Industries, Inc., *et al.*, Defendants).

First District (5th Division)   No. 1—89—2444

Opinion filed September 7, 1990.

Hardiman & Hardiman, P.C., of Chicago (Paul G. Hardiman, of counsel), for appellants.

McKenna, Storer, Rowe, White & Farrug, of Chicago (James P. DeNardo, Samuel A. Purves, and Christine L. Olson, of counsel), for appellee.

JUSTICE MURRAY delivered the opinion of the court:

Plaintiffs, James Bittler and his wife, Barbara (the Bittlers), appeal from the trial court's grant of summary judgment in favor of White and Company, Inc., one of the defendants named in their strict liability in tort and negligence action. Although the matter still pends in the trial court as to the other named defendants, the present appeal is timely and appropriate because the trial court entered a finding that there was no just cause to delay enforcement or appeal of its decision (107 Ill. 2d R. 304(a)) making the otherwise nonfinal order appealable.

The facts of the case are not in dispute. On June 3, 1984, James Bittler, an employee of Commonwealth Edison, was injured during the course of his employment when he was struck on the head by the tailgate of an Ultravac machine, a truck-mounted vacuum loader and cleaner, as it was being lowered by another employee. The Bittlers brought this cause of action to recover for injuries James Bittler allegedly suffered as a result of this incident and for his wife's loss of consortium. The action, which was predicated upon strict liability in tort and negligence, was lodged against D.P. Way Corporation (D.P. Way), the manufacturer, and Doyen & Associates (Doyen), the designer, of the Ultravac machine that had been sold to Commonwealth Edison; and against White and Company, Inc. (White), the exclusive sales representative for D.P. Way in the northern Illinois and Indiana territory.

In their third amended complaint, plaintiffs alleged in their strict liability counts (counts I and III) that the defendants were engaged in the design, manufacture, sale, distribution, or maintenance of the Ultravac unit, which was defective, unsafe and unreasonably dangerous because it lacked various devices, controls, or guards that would prevent the tailgate from being lowered while someone was standing behind the machine. In the remaining counts (counts II and IV), plaintiffs alleged that defendants were negligent for manufacturing and/or

selling a defective product, for failing to make certain safety devices available, for failing to warn of the risks associated with using their product without certain safety devices, for failing to instruct purchasers of the product on the proper usage of the safety devices, and for failing to properly maintain and service the equipment.

Defendant White filed a motion, supported by affidavits and depositions, contending that it was entitled to summary judgment because it did not design, manufacture, or gain possession of the Ultravac which allegedly injured James Bittler and so it was not in the chain of distribution for the Ultravac machine and, therefore, not subject to the imposition of strict tort liability. White also claimed that it did not commit any acts or omissions that proximately caused plaintiff's injuries and therefore could not be held liable in negligence. A hearing was held on White's motion for summary judgment, which the trial court then allowed. After denial of the Bittlers' petition for rehearing, this appeal followed.

The only issue presented on appeal is whether White may be held legally responsible, either in strict liability or in negligence, for the injuries suffered by the Bittlers. The Bittlers claim that the trial court erred in granting White's motion for summary judgment because White is liable in strict liability as one in the chain of distribution of the allegedly defective product and because a question of material fact was raised as to whether White is liable in negligence for: "(1) failing to ascertain from the manufacturer the availability of certain safety equipment including the safety bar, (2) failing to offer to the purchaser [Commonwealth Edison] the option to purchase the safety bar with the vacuum loader, and (3) failing to warn of the risks and dangers associated with the use of the vacuum loader without the safety bar in place when the tailgate door was raised and lowered."

Upon our review of the matter we find that we must reverse the decision of the trial court with respect to its grant of summary judgment on the strict liability counts and affirm the trial court's judgment with respect to the negligence counts.

■ The public policy rationale which justifies imposing strict liability on manufacturers as well as sellers, suppliers, wholesalers, distributors, and even lessors is based on the fact that these entities, as part of the chain of distribution, are involved in and reap a profit from the placement of the allegedly defective product into the stream of commerce. (*Hebel v. Sherman Equipment* (1982), 92 Ill. 2d 368, 442 N.E.2d 199; *Crowe v. Public Building Commission* (1978), 74 Ill. 2d 10, 383 N.E.2d 951.) Even parties who are not within the actual chain of distribution, but who play an integral role in the marketing enter-

prise of an allegedly defective product and participate in the profits derived from placing the product into the stream of commerce, are held liable under the doctrine of strict liability. (*Connelly v. Uniroyal, Inc.* (1979), 75 Ill. 2d 393, 389 N.E.2d 155.) In *Connelly* our supreme court held that the doctrine of strict liability applied to Uniroyal despite the fact that its only link to the chain of distribution was its authorization of the use of its trademark, which appeared on the allegedly defective tire that was admittedly manufactured by a Belgian company and sold by that company to General Motors, which then installed the tire on their automobile, which was eventually sold to plaintiff.

■ Consequently, it appears that the imposition of strict liability hinges on whether the party in question has any " 'participatory connection, for [its] personal profit or other benefit, with the injury-producing product and with the enterprise that created consumer demand for and reliance upon the product.' " *Kasel v. Remington Arms, Inc.* (1972), 24 Cal. App. 3d 711, 725, 101 Cal. Rptr. 314, 323, quoted in *Hebel v. Sherman Equipment*, 92 Ill. 2d at 379, 442 N.E.2d at 205; see also *Alvarez v. Koby Machinery Co.* (1987), 163 Ill. App. 3d 711, 516 N.E.2d 930.

■ In the present case White, the exclusive sales representative for D.P. Way, contends that it merely acted as a liaison between the manufacturer/seller (D.P. Way) and the purchaser (Commonwealth Edison) and that its role in the sales transaction was tangential, placing it outside the chain of distribution. However, this characterization belies the truth, which is that White was bound by its exclusive sales representative contract with D.P. Way to promote the sale of D.P. Way products and, through this relationship, derived an economic benefit in the form of a commission from all D.P. Way sales made within its territory, including, apparently, the one involved here. For this reason we find that White's "participatory connection" with the allegedly defective product was sufficient to make it subject to the application of the strict liability doctrine and so we reverse the trial court's grant of summary judgment in favor of White on the strict liability counts.

■ We note as an aside that White could have sought, and still may seek, dismissal from this cause of action by filing a motion pursuant to section 2—621 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—621). According to this provision, a nonmanufacturing defendant may be entitled to dismissal once the plaintiff obtains jurisdiction over the manufacturer of the allegedly defective product. However, such a dismissal would be without prejudice and

White's possible entitlement to dismissal pursuant to this provision has no relevance to the issue of whether the trial court's grant of summary judgment was proper.

■ We now address the trial court's grant of summary judgment with respect to the negligence counts. A cause of action based on negligence is different than a cause of action based on strict liability. A cause of action based on negligence requires a showing that a duty was owed by the defendant to the plaintiff, that the defendant breached that duty, and that the breach proximately caused the injury for which the action was brought. (*Wimmer v. Koenigseder* (1985), 108 Ill. 2d 435, 484 N.E.2d 1088; *Filipetto v. Village of Wilmette* (1985), 135 Ill. App. 3d 781, 482 N.E.2d 358.) In the present case plaintiffs argue that White, as a sales representative, had a duty to ascertain from the manufacturer information concerning the availability of a safety bar, inform the purchaser of the existence of this safety bar and warn the purchaser of the risk and dangers of using the vacuum loader without the safety bar in place. Plaintiffs further contend that there existed a material issue of fact as to whether White breached these duties, so that summary judgment should not have been granted. We disagree.

■■ It is well-settled law in Illinois that summary judgment is proper in a negligence action only when the pleadings, depositions, affidavits, and admissions on file show that no genuine material issue of fact exists and that defendant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c); *Pyne v. Witmer* (1989), 129 Ill. 2d 351, 543 N.E.2d 1304.) Whether a duty was owed by defendant to plaintiff is a question of law, to be decided by the court (*Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 456 N.E.2d 116), and where the evidence before the court shows that a verdict would have to be directed, summary judgment would be proper. *Pedersen v. Joliet Park District* (1985), 136 Ill. App. 3d 172, 483 N.E.2d 21.

The evidence in this case, provided by the pleadings, affidavits, and depositions, indicates that White was only indirectly involved in the sale of the vacuum loaders to Commonwealth Edison. Because White was the sales representative for the territory, White was notified by D.P. Way that it had learned that Commonwealth Edison was interested in purchasing several vacuum loaders. White then contacted Commonwealth Edison concerning their interest in the vacuum loaders and transmitted their bid on the machines to D.P. Way. Although White maintained contact with Commonwealth Edison throughout the negotiation process, White's role was mainly as a liai-

son between the parties. D.P. Way dealt directly with Commonwealth Edison concerning the sale of the machines, was responsible for demonstrating the vacuum loaders to Commonwealth Edison and provided training on the vacuum loaders to Commonwealth Edison employees after the vacuum loaders were purchased. Finally, there was also uncontroverted evidence that Commonwealth Edison sent an inquiry directly to D.P. Way in December 1982, asking about the cost of a tailgate prop, the safety device that would block the tailgate door in an open position. D.P. Way responded to this inquiry directly to Commonwealth Edison, and Commonwealth Edison then purchased tailgate props for each of the vacuum loaders they had purchased. The tailgate props were delivered to Commonwealth Edison in March 1983 but a prop was never installed on or used with the vacuum loader that caused the injury in this matter.

We find that, as a matter of law, these facts fail to establish that White was under any obligation to obtain or provide information concerning the availability of safety devices or to warn of the risks of operating a vacuum loader with a safety device. Rather, the evidence indicates that D.P. Way sold the allegedly defective equipment to Commonwealth Edison and was responsible for providing information and training on the proper usage of the equipment.

■ Additionally, the facts do not show that any of the alleged duties, even if owed by White, were ever breached or that the breach could have been the proximate cause of the injuries suffered. It is obvious from the facts that Commonwealth Edison had been made aware of the availability of the tailgate safety device by either White or D.P. Way, that Commonwealth Edison had purchased the safety device and had failed to install the device or instruct their employees on the usage of the device that they had purchased. For all these reasons, we find that the trial court did not err by granting White's motion for summary judgment on the negligence counts.

The order of the circuit court of Cook County granting White summary judgment is affirmed in part and reversed in part and the case remanded for further proceedings consistent with this opinion.

Affirmed in part, reversed in part.

COCCIA, P.J., and GORDON, J., concur.