Clarence SEDBROOK, Carol Sedbrook, Sara Sedbrook, a minor; and Connecticut Indemnity Co., Plaintiffs-Appellants,

v.

ZIMMERMAN DESIGN GROUP, LTD., f/k/a Brust & Brust Architects, Continental Casualty Company/CNA Insurance, Defendants-Co-Appellants,

MITCHELL, PACE & ASSOCIATES, INC., f/k/a J. M. Mitchell Products Co., Inc., EG&G, Inc., and Van Noorden Company, Inc., Defendants-Respondents,†

ROHM & HAAS COMPANY, Defendant-Third Party Plaintiff-Co-Appellant,

E. VAN NOORDEN COMPANY, Defendant,

LIBERTY MUTUAL INSURANCE COMPANY, Third Party Defendant-Respondent.

Court of Appeals

*No. 93–2135. Submitted on briefs September 14, 1994.—Decided December 1, 1994.*

(Also reported in 526 N.W.2d 758.)

†Petition to review denied.

14

16

For the plaintiffs-appellants the cause was submitted on the briefs of *James J. Kriva* and *Patti J. Kurth* of *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee.

For the defendants-co-appellants the cause was submitted on the briefs of *W. Wayne Siesennop, Michael Aldana,* and *M. Susan Maloney* of *Godfrey, Braun & Hayes* of Milwaukee.

For the defendant-third party plaintiff-co-appellant the cause was submitted on the briefs of *Richard K. Nordeng* of *Stafford, Rosenbaum, Rieser & Hansen* of Madison.

For the defendant-respondent *Mitchell, Pace & Associates, Inc.,* the cause was submitted on the brief of *Frank A. Scherkenbach, Russell A. Klingaman,* and *Jeffrey S. Fertl* of *Hinshaw & Culbertson* of Milwaukee.

For the defendants-respondents *EG&G, Inc.,* and *Van Noorden Company, Inc.,* and third party defendant-respondent *Liberty Mutual Ins. Co.,* the cause was submitted on the brief of *Steven C. Zach* of *Boardman, Suhr, Curry & Field* of Madison.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

EICH, C.J.   This is a products liability action in which the plaintiffs and certain defendants appeal from a summary judgment dismissing two defendants from the action: the successor corporation to the original manufacturer of the allegedly defective product and the product's distributor.

17

The questions presented for review are: (1) whether the successor corporation assumed its predecessor's strict-liability obligations for manufacturing an allegedly defective product; and (2) whether a distributor with only a minimal connection to the product may be subject to suit on strict-liability principles. We conclude that both parties are subject to suit and that the trial court erroneously dismissed them from the action. We therefore reverse the judgment and remand for trial.

The material facts are not in serious dispute. Clarence Sedbrook was employed as a maintenance worker at Beaver Dam Community Hospitals when he fell through a skylight on a hospital roof and suffered permanent, paralyzing injuries.

Sedbrook (and members of his family) sued several companies and other entities involved in the manufacture, sale and installation of the skylight, four of whom are parties in this appeal: EG&G, Inc. and Van Noorden Company, Inc. (EG&G), alleged to be the surviving parent corporation of E. Van Noorden Company, the original manufacturer of the Vanco Domelite (the skylight); Rohm & Haas Company, the manufacturer of the Plexiglas sheeting used in the manufacture of the skylight; Mitchell, Pace & Associates, Inc. (Mitchell), the distributor of the skylight; and Zimmerman Design Group, Ltd., the architectural firm that designed the hospital roof.

A flurry of motions followed. Sedbrook moved for judgment declaring EG&G, as the successor corporation to E. Van Noorden Company, strictly liable for the defective condition of the skylight. EG&G responded with its own motion seeking dismissal on grounds that it did not succeed to any product liability-based obligations of E. Van Noorden when it purchased the

company. Mitchell also sought dismissal, arguing that it could not be held strictly liable because it was no more than a "conduit" between the manufacturer and the architects and its participation in the process was limited to directing the product to the job site.

The trial court denied Sedbrook's motion, granted EG&G's and Mitchell's motions, and entered summary judgment dismissing EG&G and Mitchell from the action. Motions for reconsideration were denied, and Sedbrook, Rohm and Zimmerman[1] appeal from the judgment.

Summary judgment is properly granted when there is no genuine issue of material fact and only questions of law remain. *General Medical Corp. v. Kobs*, 179 Wis. 2d 422, 432, 507 N.W.2d 381, 385 (Ct. App. 1993). When we review summary judgments, we employ the same methodology as the trial court, *McBride v. Wausau Ins. Cos.*, 176 Wis. 2d 382, 387, 500 N.W.2d 387, 389 (Ct. App. 1993), and we will reverse where the trial court has incorrectly decided a legal issue. *Kobs*, 179 Wis. 2d at 432, 507 N.W.2d at 385. Since the material facts in this case are not in serious dispute, only legal issues are left to resolve, and we review those issues independently. *Mulhern v. Outboard Marine Corp.*, 146 Wis. 2d 604, 611, 432 N.W.2d 130, 133 (Ct. App. 1988).

---

[1] The several parties to the appeal have filed a variety of briefs—some arguing particular issues independently and some joining, in whole or in part, in the briefs of others. To simplify matters, we refer to the principal parties briefing each of the issues: Sedbrook and EG&G in the first section of the opinion, and Sedbrook and Mitchell in the second.

## *I. Strict Liability of the Successor Corporation*

■

As a general rule, a corporation purchasing the assets of another corporation will not be liable for obligations of the selling corporation. There are, however, four well-recognized exceptions to the rule: (1) when the purchasing corporation agrees to *assume* the obligations; (2) when the transaction amounts to a *merger* of the two corporations; (3) when the purchasing corporation is merely a *continuation* of the selling corporation; and (4) when the transaction is *fraudulently* contracted to escape such liability. *Fish v. Amsted Indus., Inc.*, 126 Wis. 2d 293, 298, 376 N.W.2d 820, 823 (1985).

Sedbrook argues that it was error to dismiss EG&G because any one of the first three *Fish* exceptions applies to EG&G's purchase of E. Van Noorden. According to Sedbrook, EG&G agreed to assume E. Van Noorden's liability; the transaction amounted to a merger of the two companies; and EG&G is a "continuation" of E. Van Noorden. Because we conclude that EG&G can be held strictly liable on grounds that its purchase of E. Van Noorden was a *de facto* merger, we need not address the other exceptions.

■

Four factors are generally considered determinative of whether a transaction may be considered a *de facto* merger:

> (1) the assets of the seller corporation are acquired with shares of the stock in the buyer corporation, resulting in a continuity of shareholders; (2) the seller ceases operations and dissolves soon after the sale; (3) the buyer continues the enterprise of the seller corporation so that there is a continuity of management, employees, business location, assets

and general business operations; and (4) the buyer assumes those liabilities of the seller necessary for the uninterrupted continuation of normal business operations.

*Parson v. Roper Whitney, Inc.*, 586 F. Supp. 1447, 1449 (W.D. Wis. 1984).

EG&G argues first that Wisconsin has not "expressly adopted" the four-factor test. Citing *Fish*, EG&G maintains that the key element of a *de facto* merger is whether "there is an identity of management and control" in the former and present companies. We think EG&G misreads the case. In the portion of the *Fish* opinion discussing "common identity of officers" as the key consideration, the court was discussing the "continuity" exception to the rule of nonliability—whether the purchaser is merely a continuation of the seller corporation—not the *de facto* merger exception that is at issue here. *Fish*, 126 Wis. 2d at 302, 376 N.W.2d at 824. And while, as we have noted, continuity of the predecessor corporation's management and general business operations is an element to be considered in determining whether a purchase is a *de facto* merger, it is not the key factor in the analysis. Indeed, in discussing the merger exception, the supreme court in *Fish* expressly noted that "[t]he key element in determining whether a merger or de facto merger has occurred is that the transfer of ownership was for stock in the successor corporation rather than cash." *Id.* at 301, 376 N.W.2d at 824.

We are thus satisfied that the four-factor analysis set forth in *Parson* is an appropriate method for determining whether a corporate purchase may be considered a *de facto* merger within the purview of the "merger" exception to the nonliability rule. We are also satisfied that, as the supreme court stated in *Fish*, the

21

key element in the analysis is whether the sale was for stock rather than cash.

Sedbrook argues that all four *Parson* factors have been met in this case: the consideration for the purchase of E. Van Noorden Company was 35,000 shares of EG&G stock issued to E. Van Noorden's shareholders; E. Van Noorden was dissolved and, under the terms of the purchase agreement, its customer and supplier relationships were preserved in EG&G; and E. Van Noorden conveyed to EG&G all of its transferable property, assets and contracts. Additionally, EG&G continued to manufacture the Vanco skylights as a regular part of its business activity, using the same factory, employees and suppliers, and there was a continuity of management in that at least two key E. Van Noorden personnel stayed on with EG&G, albeit for a limited time. Finally, EG&G agreed to assume all obligations of E. Van Noorden that were necessary for the uninterrupted operation of the company.

EG&G disagrees that the *de facto* merger test has been satisfied. It asserts that there was no "identity of management" between the selling and purchasing corporations, and that E. Van Noorden did not maintain any control in the successor corporation (EG&G). As a result, EG&G maintains that there could be no *de facto* merger.

As we have indicated, however, "identity of management" is an element that must be satisfied under the "continuation" exception to the nonliability rule. The separate "*de facto* merger" exception—the exception we are dealing with in this case—imposes no such stringent requirement. As we have stated, it is enough under the "merger" exception that there be "a continuity of management, employees, business location,

assets and general business operations . . . ." *Parson*, 586 F. Supp. at 1449.

In this case, EG&G continued to manufacture the same skylight after the sale, using essentially the same marketing and product distribution system used by E. Van Noorden prior to the purchase. Marvin Cantor, an officer of E. Van Noorden, became president of the wholly owned subsidiary under EG&G following the sale and was on the subsidiary's board of directors. M. Michael Cantor, a key E. Van Noorden stockholder and chairman of E. Van Noorden's board of directors, was elected chairman of the board for the EG&G subsidiary. EG&G argues that because both men resigned within one year of the sale, their involvement with the successor corporation cannot be considered "continuity in management" under the rule. We find no authority for the proposition that the continuity-of-management rule contains a longevity requirement.

We think there was sufficient continuity in the general management and business operations of the two companies to support the conclusion that EG&G's purchase of E. Van Noorden constituted a *de facto* merger. We also believe there was sufficient evidence as to E. Van Noorden's dissolution and EG&G's assumption of such of E. Van Noorden's liabilities as were necessary to the uninterrupted continuation of the business.[2] Nor is it disputed that the "key element" in the analysis—a purchase for stock, rather than cash—is present. We conclude, therefore, that EG&G's acquisition of E. Van Noorden was a *de facto* merger within the rule of *Fish* and similar cases and that, as a

---

[2] The trial court concluded that there was no dispute that the "dissolution" and "assumption of liabilities" elements had been established by the evidence.

result, there is no legal bar to Sedbrook's asserting a strict-liability claim against EG&G for its predecessor's potential liability for manufacture of the allegedly defective skylight.[3] It follows that the trial court erred

[3] EG&G contends that E. Van Noorden did not retain sufficient control in the successor company to justify application of the *de facto* merger exception to nonliability because, although EG&G purchased E. Van Noorden for stock alone, the total shares E. Van Noorden received amounted to less than one percent of EG&G's outstanding stock.

EG&G supports its argument with references to cases from other jurisdictions for the proposition that where the amount of stock transferred in the purchase represents a minute ownership interest in the successor, there is insufficient continuity of management and control to support a finding that a *de facto* merger has occurred. *See Adams v. General Dynamics Corp.*, 405 F. Supp. 1020, 1023 (N.D. Cal. 1975) (no successor liability where predecessor corporation sold for approximately two percent of purchaser's outstanding stock and predecessor had "no control or any position of control" in successor corporation); *East Prairie R-2 Sch. Dist. v. U.S. Gypsum Co.*, 813 F. Supp. 1396, 1400-01 (E.D. Mo. 1993) (no merger where predecessor corporation acquired 2.27% of successor's common stock and companies shared no common officers, directors, principal shareholders or control).

The crux of these holdings, however, is that where the shareholders of the selling corporation acquire only a small percentage of the purchaser's stock, management continuity must be examined as a separate question. And in those cases the no-merger rulings were also based on the fact that there was no continuity of officers or directors in the two corporations, a situation which, as we have indicated, is not present here.

Finally, we note our agreement with Sedbrook's observation that were we to require that the former entity either acquire substantial portions of the successor's stock or retain substantial control over the management of the successor in order for the exception to apply, very large corporations acquir-

in granting EG&G's motion for summary judgment. Sedbrook is entitled to a trial on his claim against EG&G.

## II.  *Strict Liability of the Distributor*

Sedbrook argues that the trial court erred in granting summary judgment to Mitchell because, under Wisconsin law, distributors of defective products are subject to strict liability for their participation in the product's stream of commerce. As before, this is a question of law, which we decide de novo. *Mulhern*, 146 Wis. 2d at 611, 432 N.W.2d at 133.

In *Dippel v. Sciano*, 37 Wis. 2d 443, 155 N.W.2d 55 (1967), the Wisconsin Supreme Court adopted the rule of strict products liability set forth in the RESTATEMENT (SECOND) OF TORTS § 402A (1965).[4] Generally, the rule imposes liability on "manufacturers, *distributors* and sellers—those who place or maintain [a defective] product in the stream of commerce." *St. Clare Hosp. v. Schmidt, Garden, Erickson, Inc.*, 148 Wis. 2d 750, 757,

ing smaller companies would be effectively "immune from corporate successor liability based on de facto merger."

[4] The rule provides as follows:

(1)  One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a)  the seller is engaged in the business of selling such a product, and

(b)  it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2)  The rule stated in Subsection (1) applies although

(a)  the seller has exercised all possible care in the preparation and sale of his product, and

(b)  the user or consumer has not bought the product from or entered into any contractual relation with the seller.

437 N.W.2d 228, 231 (Ct. App. 1989) (emphasis added). *See also* WIS J I—CIVIL 3200 (1994) ("[s]trict liability applies not only to the manufacturer but also to the distributor, wholesaler and retailer").[5] A comment to

[5] A comment to WIS J I—CIVIL 3260 (1994), entitled "STRICT LIABILITY: DUTY OF MANUFACTURER TO ULTIMATE USER," states that "section [402A] may apply even when the seller never has possession of the product, nor participates in the design, construction, manufacture, use, or directions for use of the product." While the drafters of the pattern jury instructions are "not infallible," as we have often noted, we will "generally view [their] work . . . as persuasive." *State v. Waalen*, 130 Wis. 2d 18, 26, 386 N.W.2d 47, 50 (1986).

In addition, Sedbrook points to several cases from other jurisdictions holding distributors who did not exercise control over the product subject to strict liability. *See Lawrence v. Brandell Prods., Inc.*, 619 So. 2d 427, 428-29 (Fla. Dist. Ct. App. 1993) (distributor who ordered shipment of defective product directly from manufacturer to retailer improperly dismissed from strict liability action); *Hammond v. North Am. Asbestos Corp.*, 454 N.E.2d 210, 216 (Ill. 1983) (asbestos broker subject to strict liability as member of "the distributive chain" where its position in the marketing process enabled it to exert pressure on manufacturer to enhance product safety); *Bittler v. White & Co.*, 560 N.E.2d 979, 982 (Ill. App. Ct. 1990) (sales representative who never had possession of the product, but earned commissions on its sale and thus had a "participatory connection" to it, held strictly liable); *Brumbaugh v. CEJJ, Inc.*, 547 N.Y.S.2d 699, 701 (N.Y. App. Div. 1989) (exclusive marketing agent who did not take actual possession, title or control of product held strictly liable as the "sole conduit" by which the product entered the marketplace); and *Kirby v. Rouselle Corp.*, 437 N.Y.S.2d 512, 514 (N.Y. Sup. Ct. 1981) (distributor who never inspected, controlled, installed or serviced defective product held subject to strict liability).

Other cases to a similar effect are collected in S.R. Shapiro, Annotation, *Products Liability: Strict Liability in Tort*, 13

26

the Restatement rule explains its extension to distributors: "[The rule] applies to any person engaged in the business of selling products for use or consumption. It therefore applies to any manufacturer of such a product, [or] to any wholesale or retail dealer or distributor . . . ." RESTATEMENT (SECOND) OF TORTS § 402A cmt. f (1965). And while the supreme court in *Dippel* declined to "specifically accept or reject any of the [Restatement] comments" because of the limited nature of the issue before it, *Dippel*, 37 Wis. 2d at 459, 155 N.W.2d at 63, we are satisfied that the applicability of the rule to sellers and distributors has been established in subsequent cases in Wisconsin and elsewhere.

In examining Sedbrook's strict liability claim against Mitchell, the trial court concluded, however, that because Mitchell never had any control over the allegedly defective skylight, but was, as it had claimed, a "mere conduit," it could not be held strictly liable under any circumstances.

Mitchell restates the argument on appeal: it maintains that cases from other jurisdictions make it clear that "only distributors who exercise control over an allegedly defective product can be held strictly liable";[6]

---

A.L.R.3d 1057, § 10[c] at 1098-99 (1967 & Supp. 1994 at 200-01).

[6] *See, e.g., Oscar Mayer Corp. v. Mincing Trading Corp.*, 744 F. Supp. 79, 84 (D. N.J. 1990) (broker who could neither recapture cost of occasional defective product by increase in cost of product or exert pressure on manufacturer to ensure product safety not subject to strict liability); *Cherry v. Siemans Medical Sys., Inc.*, 565 N.E.2d 215, 218 (Ill. App. Ct. 1990) (nonmanufacturing defendant who did not create or contribute to product defect may defer liability to manufacturer); *Alvarez v. Koby Mach. Co.*, 516 N.E.2d 930, 933 (Ill. App. Ct. 1987) (defendant who did not recommend purchase of product but merely

and it asserts that if we were to conclude that it was subject to strict liability under § 402A of the Restatement, we would be adopting a blanket rule rendering "each and every party in the chain of distribution of a product . . . strictly liable, regardless of how peripheral that involvement may be."

In so arguing, Mitchell relies heavily on *Lyons v. Premo Pharmaceutical Labs, Inc.*, 406 A.2d 185 (N.J. Super. Ct. App. Div. 1979), where the New Jersey court concluded that a pharmaceutical broker could not be

informed employer that product was for sale not subject to strict liability as he received no financial benefit from sale).

Mitchell also relies on *Cruz v. Midland-Ross Corp.*, 813 F. Supp. 628 (N.D. Ill. 1993). In *Cruz*, a company operating as a used-equipment broker purchased an industrial furnace and resold it. The broker never had possession of the furnace and never inspected it. The court granted summary judgment dismissing the broker from the action, noting that his "brief involvement [with the product] was limited to a wire transfer of funds, and holding paper title to the furnace for a total of nine days," and concluding that because the used-goods broker was not part of the "original producing or marketing chain" but only acted as a conduit for the transaction, it could not be subjected to a strict liability claim. *Id.* at 631.

We agree with Sedbrook, however, that *Cruz* is inapplicable for two reasons. First, in contrast to Illinois law that requires that the seller be in the "original producing or marketing chain," the Wisconsin Supreme Court not only has embraced the Restatement rule but has expressly recognized that sellers of used goods, as well as manufacturers, may be subject to strict liability. *See Nelson v. Nelson Hardware, Inc.*, 160 Wis. 2d 689, 701, 467 N.W.2d 518, 522 (1991). Second, while the court in *Cruz* found that the defendant was a passive "conduit" in the transaction, we are satisfied, as we note below, that Mitchell's involvement in the distribution of Vanco skylights was more than passive.

28

sued in strict liability because it had "no control over the ultimate packaging and marketing of the [allegedly defective] product . . . ." *Id.* at 191.

> There is no doubt that [the broker] was, in a sense, in the chain of distribution and contributed to placing the product in the stream of commerce. But it must be shown that it exercised control over the product.
> It is undisputed that [the broker] never had any physical control over the [product]. It merely arranged the sale; the drug was shipped directly from [the manufacturer] to [the drug company].

*Id.* at 192 (citation omitted). The *Lyons* court also stated that because the broker was more a "facilitator" than an "active participant," and played a "very passive part" in the transaction, the manufacturers of the drug "were better able than [the broker] to guard against the injury and are . . . the proper parties to pay." *Id.*

Mitchell argues that, like the broker in *Lyons*, it was only a "middleman," exercising no control over the skylight. Claiming that it merely arranged for the sale of the skylight and directed its shipment from the manufacturer to the job site, it argues that only the manufacturer and the architect should be subject to strict liability in this case because they were "much better able than Mitchell to guard against any possible injuries to Mr. Sedbrook."

As Sedbrook points out, however, while the *Lyons* court concluded that, on the facts before it, the broker was not subject to strict liability, it also stated that if the broker had played "any active role in [the drug company's] decision either to purchase [the drug] or to package it for [the public], it would stand in a different relationship to the plaintiffs." *Lyons*, 406 A.2d at 192.

29

And we agree with Sedbrook that under the facts of this case, Mitchell was a sufficiently active participant in the marketing of the skylight to defeat its summary judgment motion.

According to Mitchell's owners, Mitchell was the only company in the area selling E. Van Noorden products and was the representative for E. Van Noorden Company. Mitchell, which sold the skylights on a commission basis, acknowledged that it had familiarized itself with the products in order to be able to better market them, and it routinely contacted architects to "encourage" them to include the product in their design specifications. Finally, Mitchell's name and address were stamped on advertising brochures, identifying it as the distributor for Vanco Domelites.

The wisdom of a rule subjecting a distributor with only minimal contact with the product to strict liability for injuries caused by its defective condition is not before us. Applying the Restatement rule, as it has been extended and applied since its adoption in Wisconsin nearly thirty years ago, to the facts of this case compels the conclusion that Sedbrook is entitled to a trial on his claim against Mitchell.

*By the Court.*—Judgment reversed and cause remanded for further proceedings consistent with this opinion.