**Paul SMITH, Plaintiff, and Travelers Property Casualty, Subrogated Plaintiff,**

v.

**MEADOWS MILLS, INC., Defendant.**

No. 98–C–310.

United States District Court, E.D. Wisconsin.

Aug. 17, 1999.

James Garner, Dixon Gahnz, Madison, WI, for plaintiff.

Timothy Strattner, James M. Fergal, Waukesha, WI, for defendant.

## DECISION AND ORDER

ADELMAN, District Judge.

Plaintiff Paul Smith and his subrogated insurer Travelers Property Casualty brought this products liability action against defendant Meadows Mills, Inc. Defendant now moves for summary judgment, arguing that it cannot be held liable under the doctrine of successor liability.

### I. FACTS

In March 1997 plaintiff sustained a catastrophic head injury while operating and cleaning an edger saw manufactured in 1979 by Meadows Mill Company, Inc. ("Company"). Plaintiff alleges, and defendant does not at this time dispute, that a defect in the design of the edger saw was a substantial factor in causing plaintiff's injury.

Company was formed in 1925 and until 1990 operated as a manufacturer of sawmill equipment based in North Carolina. In September 1990, Company entered into a contractual agreement that provided for the cash purchase of various of its assets by the Hege and Davis Acquisition Company, Inc. Under the Asset Purchase Agreement ("Agreement"), Hege and Davis agreed to purchase Company's assets for $1,120,000 in cash, with $400,000 to be paid at the time of purchase and the balance over the next ten years.

At the time of the purchase, Company's directors and officers were Richard P. Finley and Edward S. Finley. Company's stockholders at that time were Richard P. Finley, Edward S. Finley, Elizabeth Finley, Phillip Hubbard and Ann Carter. At the time of and subsequent to the purchase, the directors and stockholders of Hege and Davis were Robert Hege, III, June W. Hege, John L. Davis and Beverly

C. Davis; and its officers were Robert Hege, III, and John L. Davis. Pursuant to the Agreement, Edward S. Finley agreed to be available as a consultant to Hege and Davis for a period of ninety days after the closing.

The Agreement also provided that on the closing date Company would change its name so as to make the old name legally available to Hege and Davis. Company in fact dissolved shortly after the purchase. On or about April 3, 1991, Hege and Davis changed its name to Meadows Mills, Inc., the defendant in this action. Defendant has continued to manufacture substantially the same sawmill equipment as did Company, though with updated and expanded product lines. Many Company employees continued to work for defendant after the sawmill business changed hands, and defendant's manufacturing base remains in the same North Carolina plant used by Company.

The Agreement contains the following provisions that are relevant to the court's analysis:

> 2.6 *Liabilities Assumed.* Except as provided hereafter, Buyer shall not assume, or become obligated to pay or perform under, any of the liabilities, obligations or contracts of Seller.

(McElwee Aff., Ex. A at 3.)

> 5.4 *Seller's Retained Liabilities.* Seller agrees to pay and discharge, in accordance with its normal practices as such may be from time to time, but subject to their right to contest and defend in Seller's sole discretion, all liabilities of the Seller.

(*Id.* at 11.)

> 9.1 *Indemnification by Seller.* Seller shall indemnify and hold harmless Buyer ... from all claims, ... loss and liability resulting from or based upon ... (b) *obligations, liabilities or claims arising out of the operation of the Business prior to Closing,* (d) ... *product liability for products shipped or manufactured prior to the Closing Date,* or any other matters which existed, were manufactured or created, or which arise

in whole or in part from a state of facts existing or events occurring on or before the date of Closing....

> 9.2 *Indemnification by Buyer.* Buyer shall indemnify and hold harmless Seller from all claims, ... loss and liability resulting from or based upon ... (b) *product warranty claims with respect to products shipped by Buyer after the Closing Date,* and (c) *other obligations, liabilities and claims arising out of the operation of the Business after the Closing Date.*

> 9.2 *Allocation of Responsibility.* With respect to losses, damages and expenses arising from matters which existed, were created or arose in part from a state of facts existing or events occurring on or before the Closing Date and in part from a state of fact existing or events occurring after the Closing Date, such losses, damages and expenses shall be allocated between Seller and Buyer on the basis of the extent to which such state of facts or events related to periods on or before the Closing Date, on the one hand, and after the Closing Date, on the other hand.

(*Id.* at 13–14 (emphasis added)).

Finally, the Agreement at § 10.8 provides that it "shall be governed by and construed in accordance with the laws of the State of North Carolina without giving effect to the conflict of law principles thereof." (McElwee Aff., Ex. A at 16.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[M]aterial" facts are those facts which, under the relevant substantive law, "might affect the outcome of

the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute over such material facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the non-moving party. *Id.* Thus, a genuine issue of material fact does not exist unless "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. 2505.

The moving party bears the burden of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Celotex* at 323, 106 S.Ct. 2548. If this burden is met, the non-moving party must then present specific evidence showing that a material factual dispute exists, precluding summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In weighing a summary judgment motion, I must construe evidence in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in its favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

### III. ANALYSIS

Plaintiff's complaint states two claims against defendant based on plaintiff's injury involving the edger saw: a strict liability claim and a negligence claim. There is no dispute that the action sounds in tort. Defendant's sole argument in its motion for summary judgment is that under the well-established doctrine of successor liability it should not be held liable for plaintiff's injuries because, in purchasing Company's assets, defendant did not thereby assume liabilities arising out of products manufactured and shipped prior to closing. There are no disputed facts in this case; the only issue is the application of corporate succession law to the facts.

■ As an initial matter, however, plaintiff throws a wrench into the presumed application of Wisconsin successor liability law in this case by arguing that the substantive law of North Carolina should control this issue. When a federal court sits in diversity jurisdiction as here, it applies the substantive law of the state in which it sits, including that state's conflict of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Therefore, if there is a question about which state's law on successor liability applies here, Wisconsin's conflict of law rules govern that question. But rather than guiding this court through a choice of law analysis citing Wisconsin's choice-influencing factors, plaintiff bases his argument that North Carolina law applies on § 10.8 of the Agreement, which provides that the Agreement shall be governed by and construed in accordance with North Carolina law.

■ Plaintiff's argument based on § 10.8 is entirely without merit.[1] The court agrees with defendant that, to the extent that § 10.8 supports the application of North Carolina law, the provision pertains only to the interpretation of the Agreement itself and not to the law surrounding successor liability in the context of tort actions such as this case.

■ Indeed, based on a proper choice of law analysis, there is no question that Wisconsin law applies. Assuming for the moment that a meaningful distinction exists between North Carolina and Wisconsin law on the subject of successor liability, none of the choice-influencing factors in Wisconsin supports the application of North Carolina law in this instance. Those factors are: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the

---

1. Plaintiff cites *Bush v. National Sch. Studios, Inc.*, 139 Wis.2d 635, 407 N.W.2d 883 (1987), which is inapposite.

forum's governmental interest; and (5) application of the better rule of law. *Sawyer v. Midelfort*, 217 Wis.2d 795, 817, 579 N.W.2d 268 (Ct.App.1998) (citing *Hunker v. Royal Indem. Co.*, 57 Wis.2d 588, 599, 204 N.W.2d 897 (1973)). The law of the forum state applies presumptively unless it becomes clear that non-forum contacts are of greater significance. *Id.* (citing *Wilcox v. Wilcox*, 26 Wis.2d 617, 634, 133 N.W.2d 408 (1965)).

Plaintiff has presented absolutely no argument that North Carolina contacts are significant in this tort action—and truly that would be a difficult argument to make. Plaintiff is a Wisconsin resident whose ongoing medical care is presumably occurring within this state. The accident involving the edger saw occurred in Wisconsin while plaintiff was in the employ of a Wisconsin sawmill. The only connections to North Carolina on these facts are: (1) the edger saw itself was manufactured in North Carolina almost two decades before the accident; and (2) defendant and Company negotiated an asset purchase agreement, to which plaintiff was not a party, in North Carolina and pursuant to the laws of North Carolina years before the accident. Neither of these connections causes any of the choice-influencing considerations to weigh in favor of North Carolina law. Wisconsin substantive law applies.

In general, under Wisconsin law the purchaser of a corporation's assets does not succeed to its liabilities. *See Fish v. Amsted Indus., Inc.*, 126 Wis.2d 293, 298, 376 N.W.2d 820 (1985); *see also generally Gallenberg Equip., Inc. v. Agromac Int'l, Inc.*, 10 F.Supp.2d 1050 (E.D.Wis. 1998). Therefore, as a general matter, defendant is not liable for injuries caused by the edger saw in question unless an exception to the successor liability rule applies. Wisconsin recognizes four exceptions to the general rule:

(1) when the purchasing corporation expressly or impliedly agreed to assume the selling corporation's liability; (2) when the transaction amounts to a consolidation or merger of the purchaser and seller corporations; (3) when the purchaser corporation is merely a continuation of the seller corporation; or (4) when the transaction is entered into fraudulently to escape liability for such obligations

*Fish* at 298, 376 N.W.2d 820 (quoting *Leannais v. Cincinnati, Inc.*, 565 F.2d 437, 439 (7th Cir.1977)). There is no allegation that fraud was involved in formation of the Agreement or the transfer of assets from Company to defendant. Therefore, I will address only the first three exceptions, arguably raised by the facts of this case and the parties' briefs.

## A. Express or Implied Assumption of Liability

Plaintiff argues that by virtue of certain provisions of the Agreement defendant expressly or impliedly agreed to assume liability for injuries such as plaintiff's.[2] Principally, plaintiff points to language in § 9.2 of the Agreement that states that Buyer (defendant) shall indemnify and hold harmless Seller (Company) from all claims "resulting from or based upon ... (c) other obligations, liabilities and claims arising out of the operation of the Business after the Closing Date." In construing this language, plaintiff essentially elides the phrase "out of the operation of the Business" and interprets the language to mean that defendant will indemnify Company for claims based on liability arising after the closing date. (*See* Pl.'s Opp'n Br. at 8.) This is hardly a reasonable omission since it potentially changes the import of this subsection. Although plaintiff's injury, and thus the liability of appropriate parties, arose after the closing date, it is far from clear that this liability arose "out of

---

**2.** I note that based on § 10.8 of the Agreement the law of North Carolina *does* govern my interpretation of these provisions. Plaintiff, however, has not pointed to any feature of North Carolina law that would have distinctive bearing on this interpretive question.

the operation of the Business after the Closing Date."

■ The most obvious meaning of the § 9.2(c) language is that the liability should be triggered by or connected to some facet of defendant's business operations after the asset purchase. Defendant appears focused on the date of manufacture, 1979, as sufficient proof that it cannot be liable under the Agreement. In fact, the Agreement contemplates the possibility that defendant could be liable for products manufactured before closing. Most obviously, § 9.2 also provides that Buyer shall indemnify Seller for claims "resulting from or based upon ... (b) product warranty claims with respect to products shipped by Buyer after the Closing Date." Remarkably, neither party has put in evidence regarding the date of shipment of the edger saw involved in plaintiff's injury. In its reply brief, defendant avers without evidentiary support that "[i]t is undisputed that the product which has given rise to this action was shipped to Wisconsin many years prior to the closing date." (*See* Def.'s Reply Br. at 6.) As the party moving for summary judgment, defendant has the burden to establish the absence of a relevant factual dispute on this point. *Adickes,* 398 U.S. at 159, 90 S.Ct. 1598. Plaintiff also is entitled to the benefit of all reasonable and justifiable inferences. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. That said, I am not obligated to construe a fact such as the shipment date in plaintiff's favor when he has not even alleged it in his complaint or otherwise mentioned it. Nor has the plaintiff alleged that the edger saw was subject to maintenance work by defendant, or that there exists any other connection to the specific operation of defendant's business after the asset purchase. Under the clearest meaning of § 9.2(c), then, the liability for plaintiff's injury did not arise "out of the operation of the Business after the Closing Date" and thus does not attach to defendant.

Moreover, if § 9.2 is read in the context of its neighboring provisions and the entire Agreement, any arguable ambiguity vanishes. Section 9.1 provides that Company and not defendant has the ultimate financial responsibility for, specifically, "product liability for products shipped or manufactured prior to the Closing Date" and for, more generally, any liability "arising out of the operation of the Business prior to the Closing." The only fact in evidence linking the business of either defendant or Company to the edger saw is the manufacturing process, which occurred prior to closing date. If any connections to defendant's post-closing business operations had been shown or even alleged, then responsibility could be allocated pursuant to § 9.3, giving relative weight to the involvement of both Company and defendant. However, since none were, under the plain meaning § 9.1 defendant may seek indemnification from Company for liability based on the edger saw. Thus, a logical reading of the Agreement's entire article on indemnification does nothing to suggest that defendant expressly or impliedly assumed liability for injuries such as plaintiff's.

Finally, elsewhere in the Agreement, § 2.6 (Liabilities Assumed) and § 5.4 (Seller's Retained Liabilities) make abundantly clear that defendant did not generally intend to assume the liabilities of Company. Section 2.6 provides that "[e]xcept as provided hereafter, Buyer shall not assume ... any of the liabilities, obligations or contracts of Seller." The only "EXCEPTION" provided thereafter does not appear to apply to these facts. In sum, the language of the Agreement unambiguously indicates that defendant did not expressly or impliedly assume the liabilities of Company when it purchased the business. Therefore, this exception to the rule of successor liability does not apply.

## B. De Facto Merger

■ In *Sedbrook v. Zimmerman Design Group, Ltd.,* 190 Wis.2d 14, 20–21, 526 N.W.2d 758 (Ct.App.1994), the Wisconsin Court of Appeals adopted a four-factor analysis used by other courts in determining whether a corporate asset purchase may be considered a de facto merger, such

that the merger exception to the nonliability rule will apply:

> (1) the assets of the seller corporation are acquired with shares of the stock in the buyer corporation, resulting in a continuity of shareholders; (2) the seller ceases operations and dissolves soon after the sale; (3) the buyer continues the enterprise of the seller corporation so that there is a continuity of management, employees, business location, assets and general business operations; and (4) the buyer assumes those liabilities of the seller necessary for the uninterrupted continuation of normal business operations.

*Id.* at 20–21, 526 N.W.2d 758 (citing *Parson v. Roper Whitney, Inc.*, 586 F.Supp. 1447, 1449 (W.D.Wis.1984)). But in *Fish,* the Wisconsin Supreme Court noted that "[t]he key element in determining whether a merger or de facto merger has occurred is that the transfer of ownership was for stock in the successor corporation rather than cash." *Fish,* 126 Wis.2d at 301, 376 N.W.2d 820.

■ In this case, it is undisputed that the transfer of ownership from Company

to defendant was for cash, meaning that the key element needed to establish a de facto merger is not satisfied. *Fish* did not expressly hold that the stock requirement is *sine qua non* for finding that a de facto merger has occurred. However, *Fish* explicitly rejected a Michigan court's "expanded continuation" exception to nonliability, which relied on several conditions that essentially mirror the merger factors stated above, minus the stock transfer element. *See Fish,* 126 Wis.2d at 312, 376 N.W.2d 820 (discussing *Turner v. Bituminous Cas. Co.,* 397 Mich. 406, 244 N.W.2d 873 (1976)). The *Fish* court concluded that even if all those conditions were satisfied that was not a sufficient basis on which to impose liability. *Id.* Thus, it would appear that the Wisconsin Supreme Court has effectively determined that, absent a transfer of stock ownership, other merger factors are insufficient to sustain application of the de facto merger exception.[3] Defendant is therefore not liable under this exception, either.

## C. Mere Continuation

■ The key inquiry in the application of the mere continuation exception in Wis-

---

**3.** I note that Wisconsin's judicial emphasis on the stock transfer element in the de facto merger analysis is not consistent with statutory merger requirements in this state. Under ch. 180, a corporation may merge into another corporation by converting its shares into "shares, obligations or other securities of the surviving corporation or any other corporation *or into cash* or other property in whole or part." Wis.Stat. § 180.1101(c) (emphasis added). One of statutory effects of a ch. 180 merger is that the predecessor corporation(s) immediately cease to exist. Wis.Stat. § 180.1106(a). Another is that "[t]he surviving corporation has all liabilities of each corporation that is party to the merger." Wis. Stat. § 180.1106(c). This assumption of liability by the successor corporation is a matter of public policy determined by the state legislature "based on the rationale that no corporation should be permitted to place into the stream of commerce a defective product and avoid liability through corporate transformations or changes in form only." *Schweiner v. Hartford Accident & Indem. Co.,* 120 Wis.2d 344, 351, 354 N.W.2d 767 (Ct.App.1984) (citing *Tift v. Forage King Indus., Inc.,* 108

Wis.2d 72, 322 N.W.2d 14 (1982)). Courts recognize the de facto merger exception to the nonliability rule precisely in order "to avoid defeating the purpose of the [merger] statutes." *Id.* at 349, 354 N.W.2d 767.

In light of Wisconsin's statutory merger rules, the failure of the de facto merger exception to apply to the facts of this case is particularly troubling. In effect, Company and defendant have achieved precisely what the de facto merger exception and the statutory transfer of liability were meant to preclude— they have avoided potential liability for plaintiff's injuries by effecting a cash asset purchase, closely followed by the dissolution of the predecessor company. The result of these twin transformations has been in most ways indistinguishable from a statutory merger under § 180.1101 in which shares are converted to cash—with the salient exception that defendant, the surviving corporation, has emerged without liability for claims such as plaintiff's. This inconsistency at least qualifies the assertion in *Fish* that Wisconsin courts "continue[ ] to apply the existing corporate law to product liability cases." *Fish,* 126 Wis.2d at 303, 376 N.W.2d 820.

consin is whether there is "a common identity of the officers, directors and stockholders in the selling and purchasing corporations." *Fish,* 126 Wis.2d at 302, 376 N.W.2d 820 (citing *Leannais,* 565 F.2d at 440). As with the stock transfer requirement for the de facto merger exception, the focus here is on identity or continuity of *ownership,* not identity of product line or continuity of business enterprise. *Fish* at 301, 376 N.W.2d 820; *see also Gallenberg,* 10 F.Supp.2d at 1054–55. Again, while the *Fish* court does not state in so many words that identity of ownership is the only and indispensable condition for applying the mere continuation exception, the *Fish* decision is notable for its wholesale rejection of the modified theories of continuity crafted by other courts, under which many other factors have been deemed relevant to this analysis. *See Fish* at 303–312, 376 N.W.2d 820 (rejecting product line and expanded continuity exceptions); *Gallenberg* at 1053–55 (discussing product line and continuity of enterprise exceptions). Thus, again it appears that the Wisconsin Supreme Court has made one factor—identity of ownership—a necessary requirement for the mere continuation exception to apply.

In this case, it is undisputed that the ownership of Company was transferred from the Finleys, Phillip Hubbard and Ann Carter to the Heges and Davises at the time of the purchase. Management and control, although not dispositive of the question of ownership in Wisconsin, *see Gallenberg,* 10 F.Supp.2d at 1056–57, also changed abruptly at the time of the asset purchase. The only apparent continuity is that Edward Finley remained available as a consultant to defendant's officers for ninety days after the closing. These facts do not satisfy the requirement of identity of ownership. Therefore, the mere continuation exception to the nonliability doctrine is also inapplicable.

Since none of Wisconsin's exceptions to the law of successor liability applies, the general rule prevails, and defendant is insulated from liability in this action.

Based on the foregoing,

**IT IS ORDERED** that defendant's unopposed motion to file additional affidavits in support of its summary judgment motion is **GRANTED,** and defendant's motion for summary judgment is also **GRANTED.** This case is **HEREBY DISMISSED.**