452 A.2d 1349

**Lillian HOFFMAN, Ind. and as Administratrix of the Estate of Jules Hoffman and Robert Hoffman and Steven Hoffman and Richard Hoffman**

v.

**LOOS & DILWORTH, INC., Plymouth Hardware and Home Decorating Center, Inc., American Olean Tile Company, Hardware Supply Company, Gardner Brothers, Inc., Honeymead Products Company, C.J. Osborn Chemicals, E.W. Kaufmann Company, Joseph J. Zummo Hardware Company, American Hardware Supply Company, Parks Corporation, Nelson Supply Company, and Webb-Craft Tile Company.**

**Appeal of HONEYMEAD PRODUCTS, INC.**

**Appeal of LOOS & DILWORTH, INC.**

Superior Court of Pennsylvania.

Argued April 23, 1982.

Filed Oct. 15, 1982.

Reargument Denied Dec. 28, 1982.

William H. Bradbury, Norristown, for appellants.
Charles W. Craven, Philadelphia, for appellees.

Before WICKERSHAM, BROSKY and WIEAND, JJ.

WICKERSHAM, Judge:

Lillian Hoffman, individually and as the administratrix of the estate of Jules L. Hoffman, deceased, filed a complaint in trespass against Loos & Dilworth, Inc., Plymouth Hardware & Home Decorating Center, Inc., and American Olean Tile Company, Inc., in November of 1976 alleging, inter alia, on behalf of herself and certain of her children that a fire occurred on November 24, 1975 in her home at Plymouth Meeting, Pennsylvania. As a result of the fire Jules L. Hoffman sustained multiple traumatic injuries resulting in his death and Lillian Hoffman and co-plaintiffs Robert Hoffman, Steven Hoffman and Richard Hoffman also "suffered severe injuries." It was further alleged that the fire resulted from the ignition of combustible materials

> which materials had been in contact with the contents of a container of Superior Brand Boiled Linseed Oil, which product was packaged and distributed by defendant Loos & Dilworth, Inc., sold to plaintiff's decedent by defendant Plymouth Hardware & Home Decorating Center, Inc. and recommended for use to plaintiff's decedent by defendant American Olean Tile Company, Inc.

Reproduced Record at 7a.

The facts underlying this appeal are concisely set forth in the opinion, dated August 25, 1981, of the Honorable Richard S. Lowe, President Judge of Montgomery County Court of Common Pleas.

> This action arises out of a tragic fire which occurred at plaintiffs' home on November 24, 1975. Jules L. Hoffman, plaintiff Lillian Hoffman's husband, died in the blaze. Several other members of the Hoffman family sustained serious injuries while jumping from a second floor window in an attempt to escape the conflagration.
>
> In their Complaint, plaintiffs allege that the fire was caused by the spontaneous combustion of rags which had been used by Jules Hoffman on the night before the fire to apply Superior Brand boiled linseed oil to the kitchen floor of the Hoffman home. They further aver that the

product was defective in that it was sold without adequate warning of the possibility of spontaneous combustion.

The record reveals that Superior Brand linseed oil reaches the ultimate consumer through the following chain of distribution. The raw linseed oil is originally manufactured by Honeymead Products Company and transported, in bulk, for storage by C.J. Osborn Company, an eastern distributor. E.W. Kaufmann Company, acting as a sales agent for Honeymead, receives an order for the product from Loos & Dilworth, Inc., and transmits that order to Osborn. Osborn then converts the product, by the addition of a chemical, from raw linseed oil to boiled linseed oil. Thereafter Osborn delivers the boiled linseed oil, in bulk, to Loos & Dilworth, Inc. After receiving the oil from Osborn, Loos & Dilworth, Inc. packages it in individual containers and affixes thereto the Superior Brand label. The oil is then sold to the consumer by a retail supplier.

The original Complaint in Trespass was filed by the plaintiffs against Loos & Dilworth, Inc. on November 23, 1976. On April 28, 1977 Loos & Dilworth, Inc. filed a Complaint seeking contribution and indemnity against additional defendants Honeymead Products Company, C.J. Osborn Chemicals Company, and E.W. Kaufmann Company. On February 12, 1981 E.W. Kaufmann filed a Motion for Summary Judgment, which Motion was granted, after argument and upon consideration of the briefs of counsel, by Order dated April 16, 1981. Loos & Dilworth, Inc. and Honeymead have appealed to The Superior Court of Pennsylvania from the aforesaid Order, thereby necessitating this Opinion.

Lower ct. op. at 1–2.

In its complaint against additional defendant, E.W. Kaufmann Company, defendant Loos & Dilworth, Inc. alleged the following, inter alia:

1. The defendant, Loos & Dilworth is a corporation having a place of business at 61 East Green Lane, Bristol, Pennsylvania, and packages and distributes linseed oil

under the brand name of Superior Brand Boiled Linseed Oil.

2. The plaintiffs have commenced the instant action in trespass to recover for personal injuries sustained by them, as well as Wrongful Death and Survival Actions for the death of Jules L. Hoffman, allegedly caused by a fire in their home on November 24, 1975; . . . .

3. Plaintiffs, in their Complaint, allege that the aforementioned fire resulted from the defective or unreasonably dangerous condition of Superior Brand Boiled Linseed Oil, or as a result of the omission of warnings, cautions and directions concerning the products, and other negligence and carelessness of the defendant Loos and Dilworth, Inc.

4. The defendant, Loos & Dilworth, does not treat, cure, alter or otherwise change the composition of the linseed oil which it receives, it only packages and distributes it under the name 'Superior Brand'.

5. The defendant, on January 28, 1977, by Writ, joined as additional defendants Honeymead Products Company, C.J. Osborn Chemicals Company and E.W. Kaufmann Company.

. . . .

23. The additional defendant, E.W. Kaufmann Company, is a corporation with a place of business at 110 Pennsylvania Avenue, Oreland, Pennsylvania.

24. The additional defendant, E.W. Kaufmann Company, is a manufacturer's representative and is an agent for Honeymead Products Company and accepts orders for boiled linseed oil from defendant, Loos & Dilworth, on behalf of Honeymead and arranges for shipment of the linseed oil by C.J. Osborn Chemicals Company.

25. Defendant, Loos & Dilworth, joins E.W. Kaufmann Company as an additional defendant to protect its rights of contribution and indemnity against Kaufmann.

26. If the defendant, Loos & Dilworth, is found liable to plaintiffs for their damages as alleged in their Complaint, then the additional defendant, E.W. Kaufmann

Company, is alone liable to the plaintiffs, liable over to the defendant, Loos & Dilworth, or is jointly and severally liable with the defendant, Loos & Dilworth, on the causes of action set forth by the plaintiffs, in that the additional defendant, E.W. Kaufmann Company:

(a) Sold linseed oil in a defective and unreasonably dangerous condition which subjected the plaintiffs to an unreasonable risk of harm;

(b) Sold linseed oil without advising purchasers and users of the product's propensity to spontaneously combust by itself or when mixed with or applied to certain materials and failed to provide warnings of the same.

Appellant frames the issue presented by the instant appeal in the following manner[1]:

The issue of fact presented by the instant appeal is whether the appellee is in the chain of distribution of the allegedly defective and dangerous linseed oil. If the appellee is found to be in [the] chain of distribution and if it is further found that the linseed oil was defective and dangerous, the appellee is liable for contribution and in-

---

1. Appellant states the questions presented and summarizes its argument thereon as follows:

A.   Considering the existence of a genuine issue of material fact, did the lower Court err in granting summary judgment in favor of the appellee?

B.   Whether the appellee, E.W. Kaufmann Company, which had knowledge of the propensities of boiled linseed oil and knew that the ultimate purchasers of the product would be ordinary consumers, had a duty to warn its customers and clients of any dangerous propensities of the oil?

*Summary of Argument*

A.   The documentation in the record, including supporting affidavits, indicates that the appellee, E.W. Kaufmann Company, did purchase and receive title to the linseed oil.  The foregoing gives use to a material issue of fact, the existence of which precludes the premature entry of a Summary Judgment in its favor.

B.   As E.W. Kaufmann Company is in the chain of distribution of linseed oil, it is liable to the plaintiffs and others in the chain under Section 402A of the Restatement (Second) of Torts and is under a duty to warn purchasers of any dangerous propensities of the linseed oil.

Brief for Appellant at 3, 7.

demnity under the principle of strict liability as codified by Section 402A of the Restatement (Second) of Torts. Brief for Appellant at 8–9.

In granting summary disposition of the case in favor of E.W. Kaufmann Company, the lower court held that section 402(A) Restatement (Second) of Torts was inapplicable to finance lessors, i.e., "when the lessor is not marketing or supplying the product, but is merely a financier whose collateral is the product. . . ." In holding that E.W. Kaufmann Company was entitled to summary judgment as a matter of law, the lower court concluded that "public policy would not be furthered by imposing strict liability upon E.W. Kaufmann Company." "Kaufmann as sales agent for the manufacturer Honeymead Products Company, was merely involved in a paper transaction," the lower court found. "Its role in the distribution of the linseed oil was so limited that the imposition of strict liability would not promote the product's safety. As between other members of the distributive chain, Kaufmann patently had no duty to warn consumers of the linseed oil's dangerous propensities." Lower ct. p. at 6–7.[2]

2. In its motion for summary judgment, additional defendant E.W. Kaufmann Company alleged, inter alia:

6. The aforesaid Complaint against Additional Defendants sets forth the chain of distribution of the boiled linseed oil substantially as follows:
a) Additional defendant HONEYMEAD PRODUCTS COMPANY manufactures and sells the boiled linseed oil;
b) additional defendant C.J. OSBORN CHEMICALS COMPANY distributes and sells the boiled linseed oil; and
c) additional defendant E.W. KAUFMANN COMPANY accepts orders for the boiled linseed oil from defendant LOOS and DILWORTH, INC., on behalf of HONEYMEAD and arranges for shipment of the linseed oil by C.J. OSBORN CHEMICALS COMPANY directly to defendant LOOS and DILWORTH, INC.
. . . .
9. At all times material during the limited involvement of E.W. KAUFMANN COMPANY with the boiled linseed oil, said oil is owned, held, maintained and transported in bulk by additional defendants HONEYMEAD PRODUCTS COMPANY and C.J. OSBORN CHEMICALS and is not available, in bulk, to retail purchasers.

In *Francioni v. Gibsonia Truck Corp.*, 472 Pa. 362, 372 A.2d 736 (1977), Justice Nix outlined the policy behind a cause of action for strict liability in tort pursuant to section 402(A) of the Restatement (Second) of Torts. He said:

It too easily disregards the policy basis for strict liability which supports application of the rule to any supplier of a product who, because he is in the business of supplying products, assumes a special responsibility toward the consuming public.[2]

In *Escola v. Coca Cola Bottling Co. of Fresno,* 24 Cal.2d 453, 150 P.2d 436 (1944), Justice (later Chief Justice) Traynor declared in his landmark concurring opinion:

10. Defendant LOOS and DILWORTH, INC. purchases the boiled linseed oil in bulk, packages the oil in its own containers, and places its own 'Superior Brand' label on said containers.

. . . .

16. The affidavit of E.W. KAUFMANN is attached hereto and marked as Exhibit 'A'.

AFFIDAVIT

My name is EMERSON W. KAUFMANN and I depose and state to the best of my information, knowledge and belief that the following facts are true and correct:

1. That in 1974 and 1975 I was the principal executive in the E.W. KAUFFMAN COMPANY.

. . . .

3. That with respect to the origin of the linseed oil used by LOOS and DILWORTH in the periods 1974–1975, it is produced by HONEYMEAD PRODUCTS in Minneapolis and shipped on a consignment basis to tanks at C.J. OSBORN in Pennsauken, New Jersey. *HONEYMEAD retains title to this oil until someone else removes it from the storage tank. Generally speaking, only two parties take title to it when it is removed from the storage tank. They would be* either OSBORN or its parent company, Superior Varnish & Drier both of whom consume the oil in production, *or E.W. KAUFMANN COMPANY who resells it to other parties.* However, there was an exception in the case of LOOS & DILWORTH in that title passed directly from HONEYMEAD PRODUCTS to LOOS & DILWORTH. Any oil which LOOS & DILWORTH obtained from HONEYMEAD PRODUCTS at the time in question was never owned by either E.W. KAUFMANN COMPANY or OSBORN. OSBORN was paid a through-put cost amounting to $.002 per pound for oil which they removed from the tank and shipped to LOOS & DILWORTH, and the E.W. KAUFMANN COMPANY also received a sales commission of $.002/lb. on that oil.

Reproduced Record at 209a–14a. (Emphasis added)

. . . public policy demands that responsibility be fixed wherever it will most effectively reduce the hazards to life and health inherent in defective products that reach the market. *Id.* at 462, 150 P.2d at 440.

By the adoption of Section 402A, that responsibility was placed on those who, through manufacturing and distribution, intend that products "reach the market." *Bialek v. Pittsburgh Brewing Co.,* 430 Pa. 176, 187 n. 2, 242 A.2d 231, 236 n. 2 (1968); Restatement (Second) of Torts § 402A, Comments c and f. While Section 402A speaks only in terms of "sellers", the foregoing policy statement and accompanying citations demonstrate the propriety of extending its application to anyone "who enters into the business of supplying human beings with products which may endanger the safety of their persons and property, . . ." Restatement (Second) of Torts § 402A, Comment f. What is crucial to the rule of strict liability is not the means of marketing but rather the fact of marketing, whether by sale, lease or bailment, for use and consumption by the public. *Link v. Sun Oil Co.* [160] Ind.App. [310], 312 N.E.2d 126, 130 (1974); *Whitfield v. Cooper,* 30 Conn.Sup. 47, 298 A.2d 50 (1972); *Delaney v. Towmotor Corp.,* 339 F.2d 4, 6 (2d Cir.1964). Where the fundamental principles are applicable, the imposition of artificial distinctions will only frustrate the intended purpose.

---

[2] The theory of liability of the supplier of chattels is premised upon the recognition that he has so dealt with the goods that they are likely to come into the hands of another and to do harm if they are defective. Originally, liability was based solely upon negligence. However, the trend towards finding a ground for strict liability began in approximately 1905 as a consequence of the national concern over the marketing of defective food. . . .

*Id.,* 472 Pa. at 366–67, 372 A.2d at 738–39.

More recently in *Nath v. National Equipment Leasing Corp.,* 497 Pa. 126, 439 A.2d 633 (1982), the issue presented was whether section 402A applied to a lessor under a secured transaction financing device. The court, through Justice Nix, said:

It is clear from *Francioni* that there was no intention of extending the coverage of Section 402A to transactions

that are designed solely for financing purposes. The factors pertinent to our determination to extend Section 402A coverage to lessors in the business of leasing products to the public were:

> (1) In some instances the lessor, like the seller, may be the only member of the marketing chain available to the injured plaintiff for redress; (2) As in the case of the seller, imposition of strict liability upon the lessor serves as an incentive to safety; (3) The lessor will be in a better position than the consumer to prevent the circulation of defective products; and (4) The lessor can distribute the cost of compensating for injuries resulting from defects by charging for it in his business, i.e., by adjustment of the rental terms. 472 Pa. at 368–69, 372 A.2d at 739.

.... Section 402A which provides for a form of strict liability is, of course, not predicated upon "fault" or "negligence." That which provides the basis for fastening liability upon suppliers of products is that the supplier or manufacturer is the one that has the control over the product and places it within the stream of commerce. The party merely financing the transaction has no control over its manufacture, is not involved in the selection of the product nor in any way makes a representation as to its quality or soundness. Between the financier and the ultimate purchaser, it is usually the latter who selects the goods, negotiates for its purchase and has control over its use.

While it is true that the financing makes the purchase possible, and to that limited extent the financier can be perceived to have participated in the delivery of the product, such a tangential participation in the supplying of the goods does not justify the imposition of strict liability. As noted, the financier is not supplying the chattel but rather is offering the use of money.

*Id.,* 497 Pa. at 131–32, 439 A.2d at 635–36.

The question before us is whether E.W. Kaufmann Company's status as sales agent for Honeymead Products Com-

pany, the manufacturer of the boiled linseed oil, is equivalent to the status of National Equipment Leasing Corporation in *Nath*. In *Nath* the left hand of the appellant became caught in the gears and blades of a wire and cable stripping machine which did not provide a guard to protect the user's hands. His employer, Keystone Metals Company, had obtained the machine from the Rigby Manufacturing Company, which made it. Keystone had requested appellee, National Equipment Leasing Corporation to finance the purchase. Appellee, National Equipment Leasing Corporation, borrowed money from the Pittsburgh National Bank in order to provide the funds for Keystone's purchase of the machine.

In *Nath* Justice Nix concluded that the participation of National Equipment Leasing Corporation in the chain of events "was tangential." "Its financing role was not substantial in the creation of an undue risk of harm," the court held.

> This finance lessor was not able to, nor would it have been in a position to, effect or oversee the safety of the product. In terms of the chain of events, National's relationship to the product was identical with that of PNB. The product was mere collateral. A finance lessor is not in the business of selling or marketing merchandise. A finance lessor is in the business of circulating funds. Such an activity cannot possibly produce reasonable reliance upon the safety of the merchandise. For the foregoing reasons, a finance lessor's role in the chain of events does not provide a predicate upon which the imposition of strict liability can rest for a defective product.

*Id.*, 497 Pa. at 132–133, 439 A.2d at 636.

Instantly, we do not believe that the role of E.W. Kaufmann Company in the chain of events was tangential. It was not a finance lessor. The product was not mere collateral.

E.W. Kaufmann Company was in the business of selling or marketing merchandise, here linseed oil, and as such Kaufmann's role in the chain of events does provide a predicate

upon which the imposition of strict liability can rest for a defective product. Kaufmann was directly involved in supplying the chattel, not merely offering the use of money as in *Nath*.

As was pointed out in *Francioni*, public policy demands that responsibility be fixed wherever it will most effectively reduce the hazards to life and health inherent in defective products that reach the market; by the adoption of section 402A, that responsibility was placed on those who, through manufacturing and distribution, intend that products reach the market. What is crucial to the rule of strict liability is not the means of marketing, but rather the fact of marketing, whether by sale, lease or bailment, for use and consumption by the public. "Where the fundamental principles are applicable, the imposition of artificial distinctions will only frustrate the intended purpose." *Francioni v. Gibsonia Truck Corp.*, 472 Pa. at 367, 372 A.2d at 39.

The order and summary judgment in favor of E.W. Kaufmann Company is reversed and the case remanded for further proceedings. Jurisdiction of the superior court is relinquished.