SCIRICA, Circuit Judge, concurring in part and dissenting in part.
 

 This case implicates an important yet relatively uncharted area of law. No Pennsylvania court has yet examined the product liability of an online marketplace like Amazon's for sales made by third parties through its platform. Our task, as a federal court applying state law, is to predict how the Pennsylvania Supreme Court would decide the case.
 
 Berrier v. Simplicity Mfg., Inc.
 
 ,
 
 563 F.3d 38
 
 , 45 (3d Cir. 2009). We must take special care "to apply state law and not ... to participate in an effort to change it."
 
 McKenna v. Ortho Pharm. Corp.
 
 ,
 
 622 F.2d 657
 
 , 663 (3d Cir. 1980) (internal citation omitted). In my view, well-settled Pennsylvania products liability law precludes treating Amazon as a "seller" strictly liable for any injuries caused by the defective Furry Gang collar.
 

 The plaintiffs weigh in detail policy reasons for allowing them to sue Amazon. Plaintiffs' theory would substantially widen what has previously been a narrow exception to the typical rule for identifying products liability defendants sufficiently within the chain of distribution. A "seller" in Pennsylvania is almost always an actor who transfers ownership from itself to the customer, something Amazon does not do for Marketplace sellers like The Furry Gang.
 
 [1]
 
 For similar reasons, every court to consider the question thus far has found Amazon Marketplace not a "seller" for products liability or other purposes; several of those courts have done so under products liability regimes similar to Pennsylvania's.
 
 [2]
 
 For these reasons, I respectfully dissent from the majority's disposition of the claims not barred by the Communications Decency Act (CDA).
 

 I.
 

 Amazon is a multinational technology company. Among other ventures, it hosts online sales. Products are offered for sale at Amazon.com in three primary ways. First, Amazon sources, sells, and ships some products as seller of its own goods. Second, third-party sellers sell products through Amazon Marketplace "fulfilled by Amazon," purchasing Amazon's services in storing and shipping their products. Third, at issue here, third-party sellers sell products through Amazon Marketplace without additional "fulfillment" services. These sellers, like The Furry Gang, supply and ship products directly to consumers without ever placing the items in Amazon's possession.
 

 Amazon Marketplace has grown enormously in recent years. Over a million businesses of all sizes sell products on Amazon Marketplace, according to Amazon's own figures, and "small and medium-sized businesses selling in Amazon's stores now account for 58 percent of [Amazon's] sales." Amazon, 2019 Amazon SMB Impact Report 1, 3, https://d39w7f4ix9f5s9.cloudfront.net/61/3b/1f0c2cd24f37bd0e3794c284cd2f/2019-amazon-smb-impact-report.pdf (last accessed June 17, 2019). These businesses and their products are diverse: a recent profile of highly successful Amazon Marketplace sellers included businesses offering beauty products, indoor gardening kits, and an educational toy teaching coding. Kiri Masters,
 
 4 Companies Founded By Millennials That Are Making Millions on Amazon
 
 , Forbes (Aug. 9, 2018), http://www.forbes.com/sites/kirimasters/2018/08/09/4-companies-founded-by-millennials-who-are-selling-millions-on-amazon. Amazon Marketplace and other online platforms give consumers the ability to buy from small and large businesses whose products they may never have encountered in an ordinary physical store.
 

 Amazon envisions its Marketplace as an open one. It reserves the right to remove sellers' listings or terminate Marketplace services for any reason and requires sellers to represent they are in good legal standing, but it does not apply a general vetting process to all sellers to identify those who do not in fact meet that standard. Amazon also does not narrow the Marketplace's offerings by limiting the number of sellers who may offer each type of product: any number of sellers may register. In displaying products to customers, Amazon distinguishes products sold through the Marketplace from those sold directly by Amazon, identifying the seller responsible for the item in a "sold by" line placed prominently next to the price and shipping information. App. 211. The seller's name also appears on the order confirmation page, before the customer clicks
 "place your order" to finalize the purchase.
 

 Id.
 

 Amazon's conditions of use for customers affirm the distinction, explaining, in Amazon Marketplace purchases from third-party sellers, "you are purchasing directly from those third parties, not from Amazon. We are not responsible for examining or evaluating, and we do not warrant, the offerings of any of these businesses or individuals." Appellee's Br. 4 (citing Amazon,
 
 Conditions of Use
 
 , http://www.amazon.com/gp/help/customer/display.html/ref=footer% 20cou?ie=UTF8& nodeId=508088 (last updated May 21, 2018)).
 

 A customer on Amazon Marketplace buys a product that has been chosen, sourced, and priced by the third-party seller. The seller contractually commits to "ensure that [it is] the seller of each of [its] Products" listed for sale. App. 164. In exchange for Amazon's services including listing the product and managing payments, the seller is charged a monthly fee, as well as a referral fee of a percentage of each sale made. The relationship reflected in the agreement between Amazon and the seller is one of "independent contractors."
 
 Id.
 
 at 270. The agreement specifically disclaims other potential relationships: it does not mean to create relationships of "partnership, joint venture, agency, franchise, sales representative, or employment," nor does it create an "exclusive relationship" constraining either Amazon or the third-party seller from other sales relationships.
 
 Id.
 

 For each new listing a seller creates, the seller identifies the product it plans to sell, designates a price, and writes a product description. Amazon requires the description include certain minimum information about the product, and requires the seller to offer a price as favorable as the one it offers in any other sales channels. Amazon also automatically formats the information provided into a product listing page matching others on the Marketplace, and it sometimes modifies listings to streamline user experience: for example, by grouping together the pages of multiple sellers who offer the identical product sourced in different ways. The seller may choose to offer, or not to offer, a warranty on its product. Regardless, the agreement makes the seller "responsible for any nonconformity or defect in, or any public or private recall of, any of [its] products."
 
 Id.
 
 at 173.
 

 II.
 

 When a product is sold on Amazon Marketplace, the third-party seller offering the product for sale, as well as the product's original manufacturer, may each be sued in product liability if the product is defective. This case raises the question whether Amazon, too, can be liable as a "seller" of such a product, because of the assistance it gives to the third-party seller that provided the product to the customer. Plaintiffs answer this question in part by invoking a set of four policy factors laid out in
 
 Francioni v. Gibsonia Truck Corp.
 
 ,
 
 472 Pa. 362
 
 ,
 
 372 A.2d 736
 
 , 739 (1977). For the reasons I discuss in Part III, the
 
 Francioni
 
 factors should come second to an analysis under Pennsylvania law of the defendant's role in supplying the product.
 
 See
 

 Cafazzo v. Cent. Med. Health Servs.
 
 ,
 
 542 Pa. 526
 
 ,
 
 668 A.2d 521
 
 , 523 (1995). I begin, instead, with the definition of "seller" under Pennsylvania law.
 

 A.
 

 A seller under Pennsylvania product liability law is one "engaged in the business of selling ... a product."
 

 Id.
 

 at 523
 
 (quoting Restatement (Second) of Torts § 402A(1)(a) (Am. Law Inst. 1965) ). In nearly all cases, "selling" entails something Amazon does not do for Marketplace products: transferring ownership, or a different
 kind of legal right to possession, from the seller to the customer. Thus, in Pennsylvania, sellers include traditional wholesalers and retailers, as well as those who supply a product through a transaction other than a sale.
 
 See, e.g.
 
 ,
 
 Chelton v. Keystone Oilfield Supply Co.
 
 ,
 
 777 F. Supp. 1252
 
 , 1256 (W.D. Pa. 1991) (wholesaler);
 
 Burch v. Sears, Roebuck & Co.
 
 ,
 
 320 Pa.Super. 444
 
 ,
 
 467 A.2d 615
 
 , 618 (1983) (retailer);
 
 Francioni
 
 ,
 
 372 A.2d at 739-40
 
 (lessor);
 
 Villari v. Terminix Int'l, Inc.
 
 ,
 
 663 F. Supp. 727
 
 , 730-31 (E.D. Pa. 1987) (pest control company supplying insecticide as part of service). Though varied, each of these cases holds liable a "seller" who transferred the right to possess the product from itself to the customer.
 

 Transfer of a right to possession is so typical to "sellers" that exceptions are rare. There is one primary exception in Pennsylvania caselaw: the "manufacturer's representative."
 
 See
 

 Hoffman v. Loos & Dilworth, Inc.
 
 ,
 
 307 Pa.Super. 131
 
 ,
 
 452 A.2d 1349
 
 , 1351 (1982).
 
 Hoffman
 
 reversed a grant of summary judgment for the defendant and held a "manufacturer's representative" could be strictly liable.
 
 Id.
 
 at 1354-55. A manufacturer's representative, also termed "sales agent" or "manufacturer's agent," is a salesperson who helps a manufacturer expand sales by representing a product, usually in a particular region for a period of time, promoting the product to retailers or directly to customers.
 
 [3]
 
 After evaluating this uniquely involved retail role, the Superior Court of Pennsylvania concluded it was much more than "tangential," and the sales agent could be held liable as a seller.
 
 Id
 
 . at 1354.
 

 But in no other scenario has a Pennsylvania court imposed "seller" liability on a defendant whose role in the sale did not include transferring ownership or possession of the product. For example, the Pennsylvania Supreme Court considered and rejected "seller" liability for an auctioneer who "never owned, operated or controlled the equipment which was to be auctioned."
 
 Musser v. Vilsmeier Auction Co.
 
 ,
 
 522 Pa. 367
 
 ,
 
 562 A.2d 279
 
 , 279 (1989). As the court explained, in auctioning off a product owned and controlled by the third-party seller, "[t]he auction company merely provided a market as the agent of the seller. ... Selection of the products was accomplished by the bidders, on their own initiative and without warranties by the auction company."
 
 Id.
 
 at 282. The auction company's significant role in assisting the sale was nonetheless "tangential" to the core of the transaction, the exchange between the buyer and third-party seller.
 
 Id
 
 . Similarly "tangential" was the role of the financer of a sale, who, although technically temporary owner and lessor of the supplied product, participated only by "offering the use of money."
 
 Nath v. Nat'l Equip. Leasing Corp.
 
 ,
 
 497 Pa. 126
 
 ,
 
 439 A.2d 633
 
 , 636 (1981) (quoting
 
 Francioni
 
 ,
 
 372 A.2d at
 
 740 n.3 ). Pennsylvania courts would not hold liable as sellers such tangential actors as shopping malls renting space to retailers, credit card companies that enable sales transactions, or newspapers or websites hosting classified ads.
 
 See generally
 
 3 Summ. Pa. Jur. 2d Torts § 41:61 (2d ed. 1998).
 

 Amazon Marketplace, like the auctioneer in
 
 Musser
 
 , takes an important part in assisting
 sales, but is "tangential" to the actual exchange between customer and third-party seller.
 
 562 A.2d at 282
 
 . Like an auctioneer, Amazon Marketplace provides the "means of marketing" to a third-party seller who accomplished the "fact of marketing" when it "chose the products and exposed them for sale."
 
 Id
 
 . (citing
 
 Francioni
 
 ,
 
 372 A.2d at
 
 738 ). Amazon Marketplace's services to any individual seller for an individual product are not "undertaken specifically," but rather, as with the auctioneer, provided on essentially similar terms to a large catalogue of sellers.
 

 Id.
 

 ;
 
 see
 

 id
 
 . at 282 n.3. And like an auctioneer, Amazon Marketplace never owns, operates, or controls the product when it assists in a sale.
 
 See
 

 id.
 
 at 279.
 

 Amazon Marketplace's similarities to the auctioneer emphasize it has little in common with
 
 Hoffman
 
 's manufacturer's representative, the only kind of "seller" held liable despite not having made a transfer of ownership or possession rights.
 
 Hoffman
 
 ,
 
 452 A.2d at 1354
 
 . Amazon Marketplace does not offer the co-strategizing relationship promised by manufacturers' representatives. Amazon Marketplace is not an outsourced sales force working with individual manufacturers to boost sales: it offers a marketing platform, and it is up to the third-party seller to make best use of the platform to maximize sales.
 

 Under Pennsylvania law, then, Amazon was not the seller of The Furry Gang's product and therefore is not liable for any product defect. Because established Pennsylvania law precludes holding Amazon strictly liable here, I respectfully dissent.
 

 B.
 

 While Pennsylvania law alone dictates this outcome, it is reinforced by "analogous decisions" and "other reliable data."
 
 McKenna
 
 ,
 
 622 F.2d at 663
 
 . Pennsylvania courts have yet to consider whether Amazon is strictly liable for defective products sold through its Marketplace. So just like a Pennsylvania court would, I consider relevant decisions from other jurisdictions. These sources, including two federal appellate decisions so far, confirm what Pennsylvania law already makes clear. Amazon's role in assisting a product's sale does not make it that product's "seller."
 

 The Sixth Circuit found Amazon Marketplace was not a "seller" after consulting a variety of sources to clarify the term's expansive but ambiguous meaning within the Tennessee Products Liability Act.
 
 Fox v. Amazon.com, Inc.
 
 ,
 
 930 F.3d 415
 
 , 422-25 (6th Cir. 2019). The Tennessee statute defines "seller" as "any individual or entity engaged in the business of selling a product," including a "retailer," "wholesaler," "distributor," "lessor," or "bailor."
 
 Tenn. Code Ann. § 29-28-102
 
 (7) (West 2012). Considering and rejecting a more "limited construction" proposed by Amazon,
 
 Fox
 
 ,
 
 930 F.3d at 422-23
 
 , the court interpreted this definition to include not only those who transfer title, but "any individual regularly engaged in exercising sufficient control over a product in connection with its sale, lease, or bailment, for livelihood or gain,"
 

 id.
 

 at 425
 
 . The court nonetheless found Amazon Marketplace did not fall within even this more expansive definition. The court held Amazon did not exercise sufficient control to be the product's "seller" because Amazon "did not choose to offer the [product] for sale, did not set the price of the [product], and did not make any representations about the safety or specifications of the [product] on its marketplace."
 

 Id.
 

 at 425
 
 . It noted that, as in this case, Amazon did not fulfill the product and therefore never possessed it or shipped it to the customer.
 
 Id
 
 .
 

 Even where Amazon Marketplace did fulfill the product at issue, the Fourth Circuit held Amazon was not the product's
 "seller" under Maryland common law.
 
 Erie Ins. Co. v. Amazon.com, Inc.
 
 ,
 
 925 F.3d 135
 
 , 144 (4th Cir. May 22, 2019).
 
 [4]
 
 In that case, unlike this one, Amazon "fulfilled" the product by storing it prior to sale then shipping it to the customer. The court held Amazon Marketplace was not a seller because, despite its role in "fulfilling" the sale, it never performed the basic act of sale: it did not "transfer title to purchasers of [the product] for a price."
 

 Id.
 

 at 141
 
 . The court explained, relying in part on Pennsylvania precedent, those who "own ... the products during the chain of distribution are sellers," while those who "render services to facilitate that distribution or sale[ ] are not sellers."
 

 Id.
 

 (citing
 
 Musser
 
 ,
 
 562 A.2d at
 
 283 ). Amazon, because it only rendered services and did not transfer ownership, was not a seller.
 
 Id.
 
 at 144.
 
 [5]
 
 Here, Amazon played an even more limited role: it neither stored nor shipped the product.
 

 Other federal courts have reached the same outcome. Courts have declined to treat Amazon Marketplace as a "sales agent," as plaintiffs ask us to do. In dismissing a products liability lawsuit against Amazon essentially identical to this one, the District Court for the Southern District of New York considered a New York case that, like Pennsylvania's
 
 Hoffman
 
 decision, held a sales agent liable as a "seller."
 
 Eberhart v. Amazon.com, Inc.
 
 ,
 
 325 F. Supp. 3d 393
 
 , 398-99 (S.D.N.Y. 2018) (citing
 
 Brumbaugh v. CEJJ, Inc.
 
 ,
 
 152 A.D.2d 69
 
 ,
 
 547 N.Y.S.2d 699
 
 , 700-01 (3d Dep't 1989) );
 
 see
 

 Hoffman
 
 ,
 
 452 A.2d at 1354
 
 . The court found
 
 Brumbaugh
 
 exceptional and of no help in establishing liability against Amazon.
 
 Eberhart
 
 ,
 
 325 F. Supp. 3d at 398-99
 
 . It reasoned, among New York cases holding defendants liable as sellers, "the vast majority of opinions" involve a defendant who did "at some point, own the defective product."
 
 Id
 
 . at 398. And while
 
 Brumbaugh
 
 's sales agent, given its exclusive role in connecting the manufacturer with local distributors, was "a mandatory link in [the] distributive chain,"
 

 id.
 

 at 399
 
 (quoting
 
 Brumbaugh
 
 ,
 
 547 N.Y.S.2d at
 
 701 ), the court found Amazon Marketplace's role in merely "facilitating purchases" did not rise to this level.
 

 Id.
 

 The Northern District of Illinois adopted similar reasoning in rejecting Amazon's liability.
 
 Garber v. Amazon.com, Inc.
 
 ,
 
 380 F.Supp.3d 766
 
 ,
 
 2019 WL 1437877
 
 , at *7 (N.D. Ill. Mar. 31, 2019). The court identified and analyzed the few Illinois cases in which parties who never owned the product were nonetheless held liable. It found Amazon Marketplace resembled neither a manufacturer's representative, nor a broker who made direct agreements with customers to sell the product and held exclusive rights to do so.
 
 Id.
 
 at 776-80,
 
 2019 WL 1437877
 
 , at *7-9 (discussing
 
 Hammond v. N. Am. Asbestos Corp.
 
 ,
 
 97 Ill.2d 195
 
 ,
 
 73 Ill.Dec. 350
 
 ,
 
 454 N.E.2d 210
 
 , 216 (1983), and
 
 Bittler v. White & Co.
 
 ,
 
 203 Ill.App.3d 26
 
 ,
 
 148 Ill.Dec. 382
 
 ,
 
 560 N.E.2d 979
 
 , 981 (1990) ). Amazon was not liable for third-party sales because "[the third-party seller], not Amazon, owned the [product], sourced it and listed it for sale on Amazon's marketplace, and sold and shipped it directly to the [customers]."
 
 Id.
 
 at 776-77,
 
 2019 WL 1437877
 
 , at *7. Moreover, unlike the more involved defendants held to be sellers, Amazon's " 'major role' was providing a venue and marketplace for third-party sellers ... to connect with buyers."
 
 Id
 
 . at 778,
 
 2019 WL 1437877
 
 , at *8.
 
 [6]
 
 This consensus among courts analyzing common law analogous to Pennsylvania's confirms that Amazon's limited role in Marketplace sales does not make it a "seller" liable for defective products.
 

 The Third Restatement of Torts' § 20, defining "seller," captures state law trends in Pennsylvania, common also to New York, Illinois, and other states, as federal courts considering product liability suits against Amazon Marketplace have noted.
 
 See
 
 Restatement (Third) of Torts: Prod. Liab. § 20 (Am. Law Inst. 1998) ;
 
 see also, e.g.
 
 ,
 
 Eberhart
 
 ,
 
 325 F. Supp. 3d at
 
 398 & n.4 (finding its conclusion against product liability for Amazon Marketplace "reinforced" by § 20, though New York had not adopted the provision). Although the Supreme Court of Pennsylvania has not yet had occasion to consider § 20, the provision's incremental clarification of existing law, fully consistent with Pennsylvania case law, is the kind of guidance the Pennsylvania Supreme Court would likely find informative.
 

 In explaining the parameters of seller liability, § 20 reinforces and builds on the Second Restatement's analogous definition. Under the Second Restatement, a seller is one who is "engaged in the business of selling products for use or consumption." Restatement (Second) of Torts § 402A cmt. f. This definition distinguishes the non-liable occasional seller from the liable regular seller, but it offers no help in determining what kind of involvement in a sale might be considered selling. The Third Restatement analyzes intervening case law to specify that a seller is one who "transfers ownership ... either for use or consumption," or, alternately, one who "otherwise distributes a product" by providing that product "in a commercial transaction other than a sale." Restatement (Third) of Torts: Prod. Liab. § 20.
 
 [7]
 
 Amazon Marketplace does not transfer ownership of third-party products, so it is not a seller. In its commentary, the Third Restatement also addresses the situation of businesses participating in a sale who do not themselves do the work of transferring title. These actors are "product distribution facilitators," meaning those "[p]ersons assisting or providing services to product distributors, while indirectly facilitating the commercial
 distribution of products."
 

 Id.
 

 cmt. g. In general, product distribution facilitators are not liable as sellers.
 

 Id.
 

 reporter's note g (citing
 
 Musser
 
 ,
 
 562 A.2d at
 
 283 ). Amazon Marketplace fits the description of a product distribution facilitator, so it would not qualify as a seller.
 

 The Third Restatement includes the
 
 Hoffman
 
 exception to the general rule for product distribution facilitators: exclusive sales representatives or exclusive agents are often considered sellers because the agent "trafficks intimately in [the products],"
 
 Brumbaugh
 
 ,
 
 547 N.Y.S.2d at 701
 
 , and is "bound by its exclusive sales representative contract ... to promote the sale of [the] products,"
 
 Bittler
 
 ,
 
 148 Ill.Dec. 382
 
 ,
 
 560 N.E.2d at 982
 
 .
 
 See
 
 Restatement (Third) of Torts: Prod. Liab. § 20 reporter's note g;
 
 see also
 

 Hoffman
 
 ,
 
 452 A.2d at 1354
 
 . Moreover, where the agent's franchise to sell the product is exclusive, meaning the agent is entitled to coordinate all sales of the product for a period of time in a particular region, then the agent is "a mandatory link in [the] distributive chain," cementing the rationale for its liability.
 
 Brumbaugh
 
 ,
 
 547 N.Y.S.2d at 701
 
 .
 
 [8]
 
 As noted,
 
 see
 

 supra
 
 pp. 157-58, Amazon Marketplace clearly does not fit this description.
 

 The Pennsylvania Supreme Court explained in
 
 Tincher v. Omego Flex, Inc.
 
 that it would "adopt[ ] ... sections of a restatement ... if the cause of action and its contours are consistent with the nature of the tort and Pennsylvania's traditional common law formulation."
 
 628 Pa. 296
 
 ,
 
 104 A.3d 328
 
 , 354 (2014) (internal quotation mark omitted).
 
 [9]
 
 Pennsylvania's approach is
 to evaluate "sections of a restatement" rather than adopting or rejecting the entire document.
 

 Id.
 

 at 339
 
 . In excluding most sales facilitators from products liability but making an exception for sales agents, Pennsylvania case law matches § 20 of the Third Restatement, meeting
 
 Tincher
 
 's standard. Under Pennsylvania law, as in § 20, an actor who assists a sale, but does not directly transfer ownership or possession, is in nearly all cases not a "seller" of the product.
 
 Compare
 
 3 Summ. Pa. Jur. 2d Torts § 41:60 -61,
 
 with
 
 Restatement (Third) of Torts: Prod. Liab. § 20 reporter's note g. Under Pennsylvania law, as in § 20, one kind of sales facilitator may nonetheless be a "seller": a sales agent, who personally represents the manufacturer in advocating for the product's sale, and may have an exclusive right to facilitate the product's sale for a period of time within a geographic area.
 
 Hoffman
 
 ,
 
 452 A.2d at
 
 1354-55 ; Restatement (Third) of Torts: Prod. Liab. § 20 reporter's note g. Because § 20 is "consistent with the nature of the tort and Pennsylvania's traditional common law formulation," it is likely the provision would inform the Pennsylvania Supreme Court's analysis of the question at issue in this case.
 
 Tincher
 
 ,
 
 104 A.3d at 354
 
 .
 

 In Pennsylvania, as in states across the country including New York and Illinois, a business assisting a sale is not a "seller" for products liability purposes unless it takes on the particularly involved retail relationship of sales agent/manufacturer's representative.
 
 [10]
 
 The Third Restatement's § 20 tracks this pattern. Like every federal court to consider this issue so far, I would find Amazon Marketplace not a seller.
 

 III.
 

 To deem Amazon a "seller" of Marketplace products, plaintiffs rely in large part on a four-factor policy test first articulated in
 
 Francioni v. Gibsonia Truck Corp.
 
 ,
 
 472 Pa. 362
 
 ,
 
 372 A.2d 736
 
 , 739 (1977). More recently, though, the Pennsylvania Supreme Court has clarified the
 
 Francioni
 
 test's purpose and limited applicability, making it evident the test has no role in answering the question at issue here.
 
 See
 

 Cafazzo v. Cent. Med. Health Servs.
 
 ,
 
 542 Pa. 526
 
 ,
 
 668 A.2d 521
 
 , 525 (1995).
 

 A.
 

 As the Pennsylvania Supreme Court has explained, the
 
 Francioni
 
 test guides "whether a particular supplier of products, whose status as a supplier is already determined, is to be held liable for damages caused by defects in the products supplied."
 

 Id.
 

 at 525
 
 .
 
 Cafazzo
 
 makes clear the
 
 Francioni
 
 test should not be used to determine whether, in the first place, a particular defendant is a supplier of the product: that question is a "precondition necessary for application of this analysis."
 

 Id.
 

 That question must be answered by considering "what is being done" by the defendant, and whether the activity constitutes supplying products.
 

 Id.
 

 at 524
 
 .
 

 No one disputed that the
 
 Francioni
 
 defendant, who was a lessor of hauling equipment, had supplied the equipment that
 caused the plaintiff's injury.
 
 372 A.2d at 737
 
 . The issue, instead, was whether supplying equipment via a lease made the defendant a "seller," even though the transaction was not technically a sale.
 

 Id.
 

 The Pennsylvania Supreme Court identified four policy factors which, in other jurisdictions, had served to justify including lessors as "sellers" for products liability purposes:
 

 (1) In some instances the lessor, like the seller, may be the only member of the marketing chain available to the injured plaintiff for redress; (2) As in the case of the seller, imposition of strict liability upon the lessor serves as an incentive to safety; (3) The lessor will be in a better position than the consumer to prevent the circulation of defective products; and (4) The lessor can distribute the cost of compensating for injuries resulting from defects by charging for it in his business, [i].e., by adjustment of the rental terms.
 

 Id.
 
 at 739.
 

 Because the equipment leasing company was in the business of supplying products via lease, and because of the four identified policy factors, the court held the equipment leasing company should be considered a "seller."
 
 Id.
 
 at 739-40. Similarly, though reaching the opposite outcome, the Pennsylvania Supreme Court applied the
 
 Francioni
 
 test to a pharmacy defendant, holding, although the pharmacy had supplied drugs to patients, policy factors would counsel against imposing strict product liability on the pharmacy.
 
 Coyle v. Richardson-Merrell, Inc.
 
 ,
 
 526 Pa. 208
 
 ,
 
 584 A.2d 1383
 
 , 1387 (1991).
 

 The Pennsylvania Supreme Court has also cited the
 
 Francioni
 
 test as additional support for its holding, after determining that a potential defendant was not a "supplier."
 
 See
 

 Musser
 
 ,
 
 562 A.2d at
 
 281 ;
 
 Nath
 
 ,
 
 439 A.2d at 634
 
 . In each case, the court analyzed the activities of the defendant, and found them too "tangential" to the actual sale of the product to support seller liability.
 
 Musser
 
 ,
 
 562 A.2d at
 
 282 ;
 
 Nath
 
 ,
 
 439 A.2d at 636
 
 . The court then applied the
 
 Francioni
 
 factors and found, in each case, policy considerations did not support seller liability, either.
 
 Musser
 
 ,
 
 562 A.2d at
 
 282-83 ;
 
 Nath
 
 ,
 
 439 A.2d at 635-36
 
 .
 

 Cafazzo
 
 clarifies the relationship between the two holdings present in each of these cases, establishing that policy factors alone cannot create seller liability. In
 
 Cafazzo
 
 , the court held a hospital and physician were not suppliers of a medical device they provided to a patient, accompanied by a surcharge for the device, because "the relationship of hospital and/or doctor to patients is not dictated by the distribution of such products, even if there is some surcharge on the price of the product."
 
 668 A.2d at 524
 
 .
 

 As
 
 Cafazzo
 
 makes evident, once a court has determined a defendant is too "tangential" to be considered a supplier of the product at issue, applying the
 
 Francioni
 
 policy factors is unnecessary.
 

 Id.
 

 at 523-24
 
 . Courts may nonetheless discuss them in order to demonstrate that, "even assuming that [the defendants] could reasonably be termed sellers ... the policy reasons for strict liability are not present."
 

 Id.
 

 at 525
 
 . For the reasons already discussed, Amazon Marketplace is too tangential to third-party sales of products to be considered a supplier or seller of those products under Pennsylvania law. The
 
 Francioni
 
 policy factors therefore cannot establish seller liability.
 

 B.
 

 Even if Amazon Marketplace could be considered a supplier, application of the
 
 Francioni
 
 factors would not result in liability. Indeed, the policy outcomes produced
 by liability for Amazon Marketplace closely resemble those produced by liability for an auctioneer, as in
 
 Musser
 
 .
 
 See
 

 562 A.2d at 282-83
 
 . Thus, for reasons very similar to those identified in
 
 Musser
 
 , the
 
 Francioni
 
 policy factors do not support strict product liability for Amazon Marketplace.
 

 The first factor, availability of other members of the distribution chain, weighs in Amazon's favor, just as in
 
 Musser
 
 . The
 
 Musser
 
 court found the first factor did not support liability for the auctioneer because, "in an auction there is a seller, who is served by the auctioneer."
 
 Id.
 
 at 282 (footnote omitted). Whereas in
 
 Francioni
 
 , the defendant lessor leased the product directly to the customer and the court identified no other member of the marketing chain,
 
 see
 

 372 A.2d at 739
 
 , all Amazon Marketplace products are sold by third-party sellers who are available to be sued. That seller may be defunct, insolvent, or impossible to locate by the time of suit, just as the seller of an auctioned product may be. But as the Pennsylvania Supreme Court noted in applying this factor, "[t]o assign liability for no reason other than the ability to pay damages is inconsistent with our jurisprudence."
 
 Cafazzo
 
 ,
 
 668 A.2d at 526
 
 .
 
 [11]
 

 The second two factors, the potential incentive to safety and the defendant's relative ability to prevent circulation of the products, weigh in favor of Amazon, as they did in
 
 Musser
 
 . In
 
 Musser
 
 , the court considered the auctioneer's current business model, finding the auctioneer was "not in the business of designing and/or manufacturing any particular product," nor did the auctioneer attempt to create the kind of "ongoing relationship" with any of its large catalogue of sellers "which might equip the auctioneer to influence the manufacturing process."
 
 562 A.2d at 282
 
 . The auctioneer was not the kind of seller who makes it "his business to know the product he sells."
 
 Id.
 
 at 283. Similarly, Amazon Marketplace is "not in the business" of choosing, monitoring, or influencing third-party sellers' products or their manufacturing processes.
 
 Id.
 

 [12]
 
 Rather, the current model of Amazon Marketplace is an open one. All sellers meeting Amazon's terms may offer their products, and the same general terms apply to all. Although Amazon reserves the right to eject sellers, the company does not undertake to curate its selection of products, nor generally to police them for dangerousness. As it operates now, Amazon Marketplace does not exercise, relative to the consumer, any greater "influence in the manufacture of safer products."
 
 Id.
 
 Though it is possible to envision, as plaintiffs do, a new model for Amazon Marketplace in which the company researches products for potential defects and polices sellers to ensure they do not offer them, such a model would be fundamentally different from the Amazon Marketplace that exists now. Indeed, nearly any sales facilitator, including an auctioneer, could transform itself by creating a system to research sellers, and excluding those deemed unfit, instead of serving all comers meeting its terms. This kind of transformation, though, would have costs
 as well as benefits, for small entrepreneurs who might be excluded as too risky, and for consumers whose access to all goods would likely be reduced with greater scrutiny of sellers. Under
 
 Musser
 
 , Pennsylvania products liability law does not demand a sales facilitator enter a fundamentally new business model simply because it could.
 

 Just as in
 
 Musser
 
 , the final factor, Amazon's ability to pass on the costs of product liability suits by charging all sellers more, is the only one weighing in favor of imposing liability. But because a variety of market participants could take on this insurer role if they chose, even if only peripherally involved in the sale, the fourth factor is not determinative. As the
 
 Musser
 
 court explained, where the other three policy factors are not present, imposing strict liability "would be related to the purpose of the policy considerations underlying the [ Second Restatement of Torts § 402A ] only marginally."
 
 Id.
 

 Because Amazon Marketplace is not a "supplier" of third-party products, our inquiry must end there under
 
 Cafazzo
 
 .
 
 668 A.2d at 525
 
 . Even were we to apply the
 
 Francioni
 
 policy test, though, its four policy factors also counsel against liability.
 

 IV.
 

 For these reasons, I respectfully dissent from the majority opinion as to plaintiffs' products liability claims not barred by § 230 of the CDA and would affirm the District Court's dismissal of those claims.
 
 [13]
 

 For purposes of this opinion, "ownership" includes, in addition to legal title, other rights to possess such as lease and bailment.
 

 For determination under Restatement-derived common law definition of "seller,"
 
 see
 

 Erie Ins. Co. v. Amazon.com, Inc.
 
 ,
 
 925 F.3d 135
 
 , 141-42 (4th Cir. May 22, 2019) (under Maryland common law of products liability, Amazon was not a seller of a third-party seller's product because it never held title to the product);
 
 Garber v. Amazon.com, Inc.
 
 ,
 
 380 F.Supp.3d 766
 
 ,
 
 2019 WL 1437877
 
 , at *8 (N.D. Ill. Mar. 31, 2019) (under Illinois common law, Amazon Marketplace was not within the "chain of distribution" of a third-party seller's product, nor did it "play an integral role in the marketing enterprise" such that policy considerations would justify extending liability outside the chain of distribution) (internal citations omitted);
 
 Eberhart v. Amazon.com, Inc.
 
 ,
 
 325 F. Supp. 3d 393
 
 , 398 (S.D.N.Y. 2018) (under New York common law, Amazon Marketplace was not a seller because it was not within the product's "chain of distribution"). For determination under state common law doctrine and under state statutes whose definitions of "seller" are inconclusive, requiring consideration of common law principles,
 
 see
 

 Fox v. Amazon.com, Inc.
 
 ,
 
 930 F.3d 415
 
 , 425 (6th Cir. 2019) (interpreting ambiguously defined Tennessee statutory term "seller" to include "any individual regularly engaged in exercising sufficient control over a product in connection with its sale, lease, or bailment, for livelihood or gain" but holding Amazon Marketplace did not meet this definition);
 
 Carpenter v. Amazon.com, Inc.
 
 , No. 17-3221,
 
 2019 WL 1259158
 
 , at *5 (N.D. Cal. Mar. 19, 2019) (under California law, Amazon Marketplace was not subject to strict liability because it was not "integral to the business enterprise and a necessary factor in bringing the product to market");
 
 Allstate N.J. Ins. Co. v. Amazon.com, Inc.
 
 , No. 17-2738,
 
 2018 WL 3546197
 
 , at *6-7 (D.N.J. July 24, 2018) (Amazon Marketplace was not a seller under New Jersey statutory definition encompassing "any person who, in the course of business conducted for that purpose: sells ... or otherwise is involved in placing a product in the line of commerce") (internal citation omitted);
 
 Stiner v. Amazon.com, Inc.,
 

 120 N.E.3d 885
 
 , 891 (Ohio Ct. App. 2019) (Amazon Marketplace was not a seller under Ohio statutory definition encompassing "[a] person that, in the course of a business conducted for the purpose, sells ... or otherwise participates in the placing of a product in the stream of commerce") (internal citation omitted);
 
 see also
 

 Milo & Gabby LLC v. Amazon.com, Inc.
 
 ,
 
 693 F. App'x 879
 
 , 885 (Fed. Cir. 2017) (Amazon Marketplace was not a "seller" under the Copyright Act,
 
 17 U.S.C. § 106
 
 );
 
 McDonald v. LG Elecs. USA, Inc.
 
 ,
 
 219 F. Supp. 3d 533
 
 , 541-42 (D. Md. 2016) (dismissing a Maryland-law negligence claim against Amazon);
 
 Inman v. Technicolor USA, Inc.
 
 , No. 11-666,
 
 2011 WL 5829024
 
 , at *6 (W.D. Pa. Nov. 18, 2011) (holding, under Pennsylvania products liability law, eBay was not a "seller" because eBay was not "anything more than an online forum where sellers ... may peddle their wares to buyers").
 

 See A Dictionary of Business and Management
 
 377 (Jonathan Law ed., 6th ed. 2016) (defining "manufacturer's agent" as "[a] commission agent who usually has a franchise to sell a particular manufacturer's products in a particular country or region for a given period"); Charles Cohon,
 
 Top Considerations When Hiring Manufacturers' Reps
 
 , Manufacturers' Agents National Association, http://www.manaonline.org/manufacturers/topconsiderations-when-hiring-manufacturers-reps (last visited May 9, 2019) (describing manufacturer's representatives as a kind of "outsource[d] ... sales force").
 

 In Maryland, as in Pennsylvania, product liability is governed by common law.
 
 See
 
 Maryland State Bar Association,
 
 Maryland Product Liability Law
 
 § 1.1 (2d ed. 2003). Contrary to the majority's characterization, the court's decision in
 
 Erie
 
 did not turn on a Maryland statute, but rather consulted a potentially analogous statutory provision alongside other sources including dictionary definitions and out-of-state persuasive authority to infer the common law meaning of "seller."
 
 925 F.3d at 141
 
 .
 

 Maryland differs from Pennsylvania in declining to hold liable those who transfer possession through a transaction other than a sale, such as lessors and bailors.
 
 See Maryland Product Liability Law
 
 § 4.8. For that reason, the
 
 Erie
 
 court defined "sellers" as transferors of title and did not discuss transfer of another kind of right to possess the product.
 
 925 F.3d at 141
 
 . Because no such non-sale transaction is at issue in this case, however, Maryland and Pennsylvania law are analogous, and
 
 Erie
 
 's analysis is informative.
 

 See also
 

 Allstate N.J. Ins. Co. v. Amazon.com, Inc.
 
 , No. 17-2738,
 
 2018 WL 3546197
 
 , at *5-12 (D.N.J. July 24, 2018) (Amazon Marketplace did not resemble a broker who exercised control over a product by taking title to it; it instead resembled a broker who never exercised control and was thus not a "seller");
 
 Stiner v. Amazon.com Inc.
 
 ,
 
 120 N.E.3d 885
 
 , 892 (Ohio Ct. App. 2019) (distinguishing Amazon Marketplace from the consignee who took possession of an item before putting it up for auction; Amazon Marketplace more closely resembled the auctioneer and was thus not a "seller").
 

 In defining "one who otherwise distributes a product," the provision further specifies, "[c]ommercial nonsale product distributors include, but are not limited to, lessors, bailors, and those who provide products to others as a means of promoting either the use or consumption of such products or some other commercial activity." Restatement (Third) of Torts: Prod. Liab. § 20. No such nonsale distributor is at issue in this case because the relevant transaction was a sale.
 

 "Exclusive" sales agents may represent a variety of products; they are exclusive agents for a particular product if they obtain exclusive rights from a manufacturer to sell the product for a period of time in a designated region.
 
 See, e.g.
 
 ,
 
 Brumbaugh
 
 ,
 
 547 N.Y.S.2d at 701
 
 .
 

 See also
 

 Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.
 
 ,
 
 610 Pa. 371
 
 ,
 
 20 A.3d 468
 
 , 479 (2011) (adopting the Second Restatement of Torts § 772 because "the formulation is consistent with the very nature of the tort, and with Pennsylvania law");
 
 Bilt-Rite Contractors, Inc. v. Architectural Studio
 
 ,
 
 581 Pa. 454
 
 ,
 
 866 A.2d 270
 
 , 285 (2005) (adopting the Second Restatement of Torts § 552, because the provision "is consistent with Pennsylvania's traditional common law formulation of the tort");
 
 Webb v. Zern
 
 ,
 
 422 Pa. 424
 
 ,
 
 220 A.2d 853
 
 , 854 (1966) (adopting the Second Restatement of Torts § 402A ).
 

 By contrast, the Pennsylvania Supreme Court explained it would not adopt sections of a restatement "unmoored from existing common law" and whose adoption would "produce such a policy shift that it amounts in actuality or public perception to a derogation of legislative authority."
 
 Tincher
 
 ,
 
 104 A.3d at 354
 
 . On these grounds, the Pennsylvania Supreme Court declined to adopt certain provisions of the Third Restatement of Torts that did not meet this standard because those provisions made a major revision to the traditional strict liability standard. Specifically, the provisions in question instituted a new requirement for design defect cases, requiring plaintiffs show the existence of a reasonable alternative safer design, rather than treating alternative design as one non-determinative factor among others.
 

 Id.
 

 at 346, 393-94
 
 (discussing the Third Restatement of Torts: Products Liability § 2(b) and related provisions, §§ 1 through 7, implementing the alternative design element). The court found these provisions an "inaccurate" representation of existing Pennsylvania law and believed them in potential conflict with important "general principles" of Pennsylvania products liability.
 

 Id.
 

 at 399, 397
 
 .
 

 While the provisions rejected in
 
 Tincher
 
 departed significantly from the Second Restatement and from state law developed in its framework, as observers note, other "provisions of the
 
 Restatement Third
 
 simply do as promised; they restate the current law." Vicki MacDougall,
 
 The Impact of the Restatement (Third), Torts: Products Liability (1998) on Product Liability Law
 
 , 6 Consumer Fin. L. Q. R. 105, 106 (2008). Provisions more modest than those rejected therefore may in some instances fulfill the intended purpose of Restatement guidance in Pennsylvania law: not "supplanting" Pennsylvania's "traditional approach" but "rather ... clarifying the contours of the tort."
 
 Bilt-Rite
 
 ,
 
 866 A.2d at 287
 
 .
 

 In
 
 Hoffman
 
 , the court did not discuss whether the sales agent at issue had an exclusive franchise to sell within a particular territory or a nonexclusive franchise.
 
 See
 

 452 A.2d at 1351
 
 .
 
 Hoffman
 
 , then, is consistent with cases requiring exclusivity to hold sales agents liable but does not create such a requirement itself. Regardless, for the reasons discussed above,
 
 see
 

 supra
 
 pp. 157-58, Amazon does not resemble a sales agent with either an exclusive or a nonexclusive franchise to market products.
 

 As
 
 Musser
 
 makes clear, the relevant question is whether alternate legally responsible members of the distribution chain exist, not whether the other members are solvent and able to pay.
 
 See
 

 562 A.2d at 282
 
 .
 

 The majority argues third-party sellers are in a poor position to monitor product dangerousness, because they communicate with customers through Amazon Marketplace's platform and receive access to customer ratings of their products which are also made public. But it is not clear what obstacle the Marketplace platform's collation and formatting would present to sellers monitoring customer feedback.
 

 I concur in the majority's thoughtful analysis of the CDA's application to plaintiffs' claims.